542 So.2d 766 (1989)
Jennifer SMITH
v.
WALGREENS LOUISIANA COMPANY, INC., ABC Insurance Company, Mutual Savings Life Insurance Company, XYZ Insurance Company and John Doe.
No. 88-CA-1661.
Court of Appeal of Louisiana, Fourth Circuit.
April 13, 1989.
Jennifer N. Willis, William P. Quigley, New Orleans, for plaintiff-appellant.
John C. Combe, Jr., Mark E. Seamster, Jones, Walker, Waechter, Poitevent, Carrere, & Denegre, New Orleans, for defendant-appellee.
Before KLEES, BYRNES, CIACCIO, WARD and PLOTKIN, JJ.
PLOTKIN, Judge.
Plaintiff, Jennifer Smith, appeals the dismissal of her suit by the trial judge on a motion for summary judgment filed by defendant, Walgreens Louisiana Co., Inc. We reverse.
Smith allegedly suffered injuries when she was abducted from the parking lot of the Walgreens Drug Store located at 1615 Canal Street at approximately 6 p.m. on January 2, 1985. Smith had parked her car in the parking lot that morning before reporting to work at the WNOL-TV offices in the Fisk Federal Building located next door to the drug store. Her deposition testimony indicates that she left the Fisk Building by the back exit after work and walked down Iberville Street to the parking lot to get to her car. She stated that she was carrying several bags and had an umbrella over her head because it was raining. As she walked down Iberville, she allegedly passed a man. She said that when she opened her car door, she was knocked into the vehicle by the man she had passed, who forced her to drive to another location, where she was robbed and raped.
Smith filed suit against Walgreens, claiming she was parking in the lot pursuant *767 to an agreement between WNOL and the drug store, whereby Walgreens would get free publicity in exchange for allowing WNOL employees to use the lot. In her petition, she alleged that Walgreens had breached its duty by failing to provide a reasonably safe place to park. After extensive discovery by both sides, Walgreens filed a motion for summary judgment, denying that it owed any duty to the plaintiff because she was not authorized to park in the lot. After reviewing all the evidence, the trial judge "assumed" that the plaintiff had permission to park in the lot and "assumed" that WNOL was receiving some compensation for this "accommodation." He nevertheless found that the defendant had no duty to the plaintiff because she was neither a customer nor patron of Walgreens and was not there on the invitation of Walgreens to do business with the drug store.
Motions for summary judgment may appropriately be granted by Louisiana courts only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.C.C.P. art. 966. Therefore, the motion must be denied when the following are present: (1) a genuine issue of fact which (2) is material to the case. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling Co. v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). As a general rule, the summary judgment procedure is seldom appropriate in negligence cases where a decision turns on whether or not defendant's conduct constitutes a tort. Bertrand v. Howard Trucking Co. Inc., 406 So.2d 271 (La.App. 3d Cir.1981), writ denied 410 So.2d 763 (La.1982).
Based on the record as it stands, we are unable to determine as a matter of law that the defendant owed a duty to protect the plaintiff from the assault committed by a third party. The documents before us reveal the existence of "genuine issues of material fact," making summary judgment inappropriate. See Pickett v. Jacob Schoen & Son, Inc., 488 So.2d 1257, 1259 (La.App. 4th Cir.1986).
Generally, commercial establishments in Louisiana have two responsibilities to their invitees. First, "any business which invites the company of the public must take reasonably necessary acts to guard against the predictable risk of assaults." Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369 (La.1984), citing Banks v. Hyatt Corp., 722 F.2d 214, 227 (5th Cir.1984). One jurisprudential exception to this rule occurs when the plaintiff's injuries are caused by the unforeseeable or unanticipated criminal acts of third parties. Banks, 722 F.2d at 220; Delgado v. Laboucherie Inc., 508 So.2d 956, 958 (La. App. 4th Cir.1987); Miles v. Flor-Line Assoc's, 442 So.2d 584 (La.App. 1st Cir.1983). Secondly, once a Louisiana business has voluntarily assumed a duty of protection, that duty "must be performed with due care." Harris, 455 So.2d at 1369.
Therefore, two questions must be answered before this court can determine whether the plaintiff is entitled to pursue her case against Walgreens. They are: (1) Should the defendant have foreseen the risk of assault and guarded the plaintiff from that risk? and (2) Was the defendant negligent in protecting the plaintiff from physical harm, after voluntarily assuming the duty? In the instant case, the parties disagree concerning two factual issues necessary to answer those questionswhether the attack on the plaintiff was foreseeable and whether the plaintiff had a valid business relationship with the defendant from which a duty arose.
Regarding the first issue, whether the attack was foreseeable, courts have typically held that a general risk of criminal attack is insufficient to place the burden of foreseeability on the business. As stated previously, the Louisiana Supreme Court has held that commercial establishments have "no duty to protect others from the criminal activities of third persons." Harris, 455 So.2d at 1371. This principle has been further expanded in Ballew v. Southland Corp., 482 So.2d 890 (La.App. 2d Cir.1986), where the court stated that a *768 duty arises only "when the owner, management, or employees ... have or should have knowledge of a third person's intended injurious conduct that is about to occur." Id. at 893. Therefore, not only must the specific crime be foreseeable, it must be foreseeable that the crime will occur at or near the time the incident actually happens before a commercial establishment is liable for an assault.
In determining whether an assault was foreseeable, courts have considered whether similar incidents which occurred on the premises. See Miles, supra; Pennington v. Church's Fried Chicken, 393 So.2d 360 (La.App. 1st Cir.1980). However, the jurisprudence indicates that a high number of such incidents is necessary to establish foreseeability. In Miles, the court held that proof of six instances of the identical crime in a four-year period was insufficient to establish foreseeability. In Pennington, two prior incidents in the preceding three years was inadequate.
In the instant case, plaintiff claims that the defendant had actual knowledge of the dangerous nature of its location. In support of this contention, plaintiff filed an aerial photograph showing the location of the parking lot in what she calls "a crime corridor between the interstate, a cemetery and a housing project." She also presented an affidavit from a "security expert" formerly employed by the New Orleans Police Department who stated that the area where the Walgreens store is located had the highest incidence of crime against pedestrians in the downtown area during the first three quarters of 1984. Additionally, she presented the deposition of store manager Landry who stated that a security guard was employed by the store because he was aware of the high incidence of crime in the area. Landry also admitted in his deposition that his own car was broken into and that he was aware of other instances of car vandalism and theft "during that time." Finally, plaintiff cites a number of out-of-state cases which hold that the determination of whether a particular event is foreseeable should always be left for the jury. Walgreens contests these contentions, saying the manager's awareness that the store was located in a "high risk neighborhood" is not sufficient in itself to prove that this particular crime is foreseeable.
Without adopting a rule as broad as that encouraged by the plaintiff, we hold that in this particular case, the issue of foreseeability cannot be decided on the record as it stands. Although the manager admitted that some crime occurred in the parking lot in question around the time of the assault, the plaintiff failed to prove the dates of any of the incidents. The plaintiff's assault occurred only three months after the store opened in November of 1984. In light of the previous caselaw in this area, absent proof of specific incidents of crime prior to, not simply around the time of, plaintiff's attack, we are unable to say that this incident was foreseeable. The issue should be referred to the trial on the merits.
Regarding the second issue, the existence of a valid business relationship between the plaintiff and defendant, the defendant claims that the plaintiff was not legally parked in the Walgreens parking lot. Walgreens admits that prior to this incident on January 2, 1985, its manager, Earl Landry, and WNOL-TV's Director of Operations, Richard Sasnett, informally agreed that several of the television station's nighttime operations employees would be allowed to use the parking lot, but alleges that Ms. Smith was not one of the employees involved. Walgreens emphasizes the fact that no formal agreement had been reached on the issue and alleges that it was not receiving any consideration for allowing the employees to park there. This story is confirmed by Sasnett's deposition testimony.
Plaintiff testified by deposition and affidavit that prior to the incident Sasnett had told her that she had permission to park in the Walgreens' lot. Her story was corroborated by the deposition testimony of Graciella Rodriquez, a former WNOL employee. Smith also presented the affidavit of another former WNOL employee, Yolanda Johnson, who stated that she processed advertising invoices and knew that Walgreens *769 was getting free advertising in exchange for use of the parking lot.
After reviewing all the evidence, the trial judge "assumed" that the plaintiff had permission to park in the lot and that the station had paid some consideration for that right. However, it is not clear from the record that such was the case. Certainly, "reasonable minds" could differ in that conclusion, based on the record as it stands. Motions for summary judgment may be granted only when reasonable minds must conclude that there are no genuine issues of material fact. Transworld, supra, 524 So.2d at 217.
The issue of whether the plaintiff had a valid business relationship to the defendant is material to the instant controversy, despite the trial judge's indication that he could find no duty even assuming that such a relationship existed. The general rule is that commercial establishments have a duty to take reasonable precautions to protect against assaults on their property. Banks, supra; Harris, supra. In most of the cases dealing with this issue, patrons were involved. However, if the plaintiff in the instant case had permission to park in the lot because her employer was extending consideration to the defendant, the relationship between the parties is very similar to the relationship between merchants and patrons since the merchant is gaining a benefit. The existence of a valid business relationship between the parties is therefore material to the determination of the existence of a duty on the part of the defendant to protect the plaintiff from assault. This issue must be determined before the motion for summary judgment can be properly granted.
For the above and foregoing reasons, the trial judge's granting of the motion for summary judgment is reversed and the case is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
WARD, J., dissents.
BYRNES, J., dissents for the reasons assigned by WARD, J.
WARD, Judge, dissenting.
I dissent because I believe the issue presented in the motion for summary judgment is a question of law which the Trial Judge, given the pleadings, affidavits, depositions and other exhibits, could and did resolve. Under the operative facts which were extensively developed on the motion in the Trial Court, Walgreen's, in my opinion, is entitled to judgment as a matter of law because Walgreen's owed no duty to Smith. Under these circumstances, the Trial Court was correct when it granted summary judgment dismissing Smith's claims against Walgreens.
Under the duty-risk doctrine, the pertinent inquiries are whether the conduct complained of was the cause in fact of the harm, whether the defendant had a duty to protect plaintiff against the risk involved, whether defendant breached that duty, and whether plaintiff suffered damages as a result. The issues of cause in fact, breach of duty, and damages are ordinarily reserved for finders of fact in a trial on the merits. Whether a duty exists is a question of law, Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984), to be decided in the first instance by the Trial Court.
The sole issue in this appeal is whether Walgreens had a duty to protect Smith against the particular hazard she encountered. Although the majority does not clearly hold that Walgreens owes a duty to Smith, it assumes this by referring the case to trial for a factual determination. If there is no duty, then any factual inquiry is meaningless. Because I believe Walgreens does not owe a duty, the specific factual disputes which the majority believes must be resolved at trial are not, in my opinion, necessary or appropriate inquiries because they have no bearing on the legal issue presented of whether a duty exists.
The majority concludes that the question of the foreseeability of the criminal attack upon Smith should be referred to trial. This is not relevant to an inquiry into whether Walgreens owed a duty in the first place. Whether Walgreens should have *770 foreseen the attack on Smith may be relevant to an inquiry into whether Walgreens breached a duty owed to Smith, but if Walgreens does not owe a duty to Smith, then the issue of whether it breached a duty never arises.
Resolution of the question of whether there should be a duty is based upon assessment of various socio-economic factors. Crowe, "The Anatomy of a Tort-Greenian, as Interpreted by Crowe Who Has Been Influenced by Malone-A Primer," 22 Loy. L.Rev. 903 (1976).
One of the relevant considerations is whether the harm which Smith encountered is easily associated with the business activity of having a parking lot for invitees or patrons of Walgreens. The "foreseeability" which plays a role in this inquiry is a question of law which asks whether the injury is easily associated with the activity, not whether Walgreens should have foreseen Smith's injury. The specific harm which Smith encountered, assault, kidnapping, and rape, is not easily associated with conduct of permitting invitees to park in a parking lot adjacent to a retail establishment.
A more compelling reason to hold that Walgreens owed no duty to Smith is an economic factor. If the duty is imposed upon Walgreens and other businesses in New Orleans, the only practical way to avoid a breach is to hire parking lot security guards to protect invitees from being assaulted, kidnapped, or raped. A finding that Walgreens owed such a duty places a duty on those similarly situated, and all retail stores, large or small, which have adjacent parking lots must hire security guards to protect invitees in their parking facilities against harm from third party criminal conduct. I do not believe either Walgreens or other smaller businesses can shoulder this burden.
Finally, I believe that our failure to affirm the Trial Judge's finding of an absence of a duty in this case would undermine the prevailing jurisprudence which has expressly limited the extent of a business owner's duty to the invitees. See for example, Banks v. Hyatt Corporation, 722 F.2d 214 (5th Cir.1984), which upheld the principal that owners and operators of business establishments do not have that duty, and which went to great pains to limit an innkeeper's duty to protect its guests from criminal conduct to that area immediately adjacent to its entrance. In Banks, the Court emphasized that the duty of an innkeeper was traditionally held to a higher standard than others. In Harris, supra, our Supreme Court approved the general rule that a business establishment does not owe a duty to protect invitees against third party criminal conduct, and, although the Court reversed, holding that once protection is undertaken it must be done without negligence, the Court did not hold that a retail establishment owes an invitee a duty to protect against third party criminal conduct.
Other cases have found there is no duty owed to patrons even within the confines of the store, much less the parking lot. I would not extend it to all of the parking lot.
Consequently, under the undisputed material facts of the instant case, I find that Walgreens owed no duty to Smith to protect Smith while she was an invitee to Walgreens' parking lot from the particular harm she suffered. Summary judgment is appropriate in this case, and the Trial Court's judgment dismissing Smith's suit should be affirmed.
The other issue referred to the Trial Court is a determination of whether Smith had "a valid business relationship" with Walgreens. This issue also need not be resolved for summary judgment in this case. Regardless of the nature of the understanding between Walgreens and Smith's employer, WNOL, if Walgreens were found to owe a duty to Smith in this case, the scope of a business proprietor's duty would have been greatly extended.
The duty an owner or operator of a business owes to exercise reasonable care to protect persons from foreseeable or anticipated criminal acts by an independent third person has only been applied to those who can reasonably be considered as patrons/customers/invitees. Smith cannot, *771 by the mere existence of an arrangement between her employer and Walgreens, be considered a patron of Walgreens at the time she encountered the harm such that Walgreens owes her a reasonable duty of care to protect her from the harm.
Although as a result of the agreement with WNOL, Walgreens had a duty to fulfill certain obligations such as providing parking space for the employees and refraining from removing the employees' cars once parked in its lot, this duty was not intended to prevent the risk of crime to the employees. For this reason, I believe it is wrong to conclude, as the majority does, that the relationship between Walgreens and Smith is very similar to the relationship between merchants and customers. Rather, I believe that it is the dissimilarity of the relationships which requires an analysis of Walgreens' duty to Smith completely distinct from the analysis required in a merchant-customer situation.
Therefore, in my opinion, the unresolved factual issue of the exact nature of the Walgreens-WNOL agreement is not material to the legal question of Walgreens' duty in this case. Even assuming Smith is one of those employees whom the agreement was intended to cover, the Trial Court must still determine whether Walgreens owed a duty to protect a non-patron from the particular risk of harm she encountered, i.e. being kidnapped and raped.