600 So.2d 832 (1992)
Dean HEBERT, Plaintiff-Appellant,
v.
Rogers ANGELLE, et al., Defendant-Appellee.
No. 90-1290.
Court of Appeal of Louisiana, Third Circuit.
May 20, 1992.
*833 Margaret E. Woodward, New Orleans, for plaintiff-appellant.
George McHugh, Jr., St. Martinville, for defendant-appellant Angelle.
Gauthier & Cedars, Chester R. Cedars, Breaux Bridge, for Sheriff.
Laborde & Neuner, James L. Pate, Ben L. Mayeux, Lafayette, for Town of Henderson.
Bernard S. Smith, LaFayette, for LIGA.
Voorhies & Labbe, Gregory K. Moroux, LaFayette, for Police Jury.
W. Glenn Soileau, Breaux Bridge, Hurlburt, Privat & Monrose, W. Blake Monrose, LaFayette, for Fred Hayes.
Wm. Guste, Jr., David G. Sanders, Baton Rouge, Andrus, Boudreaux, Lemoine & Tonore, Claude Rivet, LaFayette, for State.
Barney R. Aucoin, LaFayette, for AES Ins.
Before YELVERTON, KNOLL and MARCANTEL,[*] JJ.
YELVERTON, Judge.
This personal injury damage case arises out of a shooting which took place at a bar in the Town of Henderson in St. Martin Parish. The main issue on appeal is whether or not the bar owner was liable. We affirm the trial judge's JNOV holding that the bar owner was not at fault.
*834 The plaintiff in this casethe person who was shotwas Dean Hebert, an oilfield businessman, who owned a camp at Henderson and often visited the bars there. The main defendant in the case was the person who did the shooting, Rogers Angelle, the elected constable of Ward 5 of St. Martin Parish. Angelle spent a lot of unofficial time in the bars of Henderson. The other individual defendant in the case was Fred Hayes, the owner of one of those bars, the Cock of the Bayou Lounge. It was in this bar that the shooting occurred that brought on this lawsuit.
These three individuals knew each other quite well, and were all friends. The relationship between Hebert and Angelle went back 30 years. They saw each other frequently at the bars which they regularly attended. They got into arguments every time they met. Hebert testified that they enjoyed their arguments. Angelle was of slight build, weighing only 143 pounds. He sometimes wore a pistol in a holster. He was described by the witnesses as being prone to "spout off", and he was very proud of his position as a constable. Hebert had taken to calling him Barney Fife, a tough talking but harmless policeman in a black and white television comedy show popular for many years. In their arguments, which were punctuated by profanity and name calling, the two often ended an encounter by threats of physical violence. Although physical threats were part of virtually every argument, nobody was ever hurt until the event that sparked this lawsuit.
About a week before the shooting Angelle was driving by the Cock of the Bayou Lounge at midday. Seeing Hebert's car parked outside, he stopped and went in. The visit was amiable at the beginning, but when Hebert praised his dog, Angelle said something bad about the dog, and the argument began. Hebert complained that the roof on his camp, which had been repaired several years earlier by Angelle, leaked. Hebert grabbed the bill of Angelle's cap and pulled it down over Angelle's face. As this argument wound down Hebert threatened to put Angelle in the hospital, and Angelle responded that he would put Hebert someplace where a hospital could not help him.
Angelle was angered, as usual, about the cap pulling incident and commented on it in the days that followed. The next day, again at the Lounge, this time visiting with Fred Hayes' wife, Angelle made the comment that if he had had a gun on the previous day he would have shot Hebert. Mrs. Hayes testified later that she did not pay him any attention. A few days later Angelle told Fred Hayes that if Hebert did not leave him alone then he would have to do something about it. Hayes asked Angelle if he wanted to put a peace bond on Hebert. Angelle refused and Hayes then told Angelle to stay away from Hebert.
Hayes, besides being the owner of the Cock of the Bayou, was also the Chief of Police of the Town of Henderson.
On the evening of July 25, 1985, Angelle went to the Cock of the Bayou Lounge and sat down at the bar where he began to drink beer. Hebert came in and sat down a little distance away. Hebert's purpose at the bar was apparently to communicate an invitation to everybody present to join him at his camp for gumbo, a pot of which he had in his car. Angelle and Hebert said nothing to each other until Hebert got up to leave. When Hebert got up to leave, Angelle approached him and, taking a concealed.22 caliber derringer from his pocket, ordered Hebert not to take another step. Hebert asked, "Is that a gun, can you eat that?" Angelle fired once into Hebert's abdomen.
Hebert lived, but his injuries were serious and disabling. The trial jury awarded him $600,000 in damages.
The trial jury made certain findings as to liability as set out in its answers to interrogatories on the special verdict form. The jury found that Rogers Angelle was at fault to the degree of 85%. It found that an "insurance policy issued by American Excel Insurance Company did not afford coverage to the action of Rogers Angelle." This response was based on the jury charges which had instructed the jury that the coverage excluded intentional acts. *835 The jury also found that Fred Hayes, in his capacity as owner of the Cock of the Bayou, was at fault to the degree of 15%. This latter finding was set aside by the trial judge's JNOV.
In addition to appealing the JNOV, Hebert appeals an evidentiary ruling of the trial judge, as well as two pretrial rulings that operated to release two governmental entities as defendants in the case. By summary judgment, the trial judge let out the Town of Henderson, which had been sued under the doctrine of respondeat superior for the alleged fault of Fred Hayes, in his capacity as Chief of Police of Henderson. The State of Louisiana was dismissed by a favorable ruling on another motion for summary judgment. It had been sued as the responsible entity for the torts of the constable, Angelle. We will now briefly explain why it is that we affirm the trial court's ruling in each of the four areas where error is claimed.

I.
The judge said that he was "extremely surprised" at the jury's finding that Hayes was 15% at fault. He said:
I am going to grant the N.O.V. because I don't feel that the evidence at all showed any responsibility or obligation or duty upon Mr. Hayes.
It is not disputed that the trial judge properly instructed the jury as to Hayes. The charges stated that to find Hayes liable, the jury had to find that he knew, or should reasonably have known, that Rogers Angelle intended to harm Dean Hebert in the Cock of the Bayou Lounge that night, and that Angelle had the apparent ability to harm Hebert.
A JNOV should be granted only when the evidence points so strongly and overwhelmingly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986). In the instant case the jury had to decide whether Hayes knew or should have known that Angelle intended to shoot Hebert and that Angelle had the means to carry out that intention. Smith v. Walgreens Louisiana Company, 542 So.2d 766 (La.App. 4th Cir.1989).
Hebert was able to prove to the jury that Hayes was aware of the two statements made by Angelle after the cap pulling incident and before the day of the shooting. However, Hebert was unable to show that Angelle had made any direct threats to do harm to Hebert after the cap pulling incident and before the shooting. Also, Hebert was unable to show that Angelle, on the night of the shooting, had made any threats, directly or indirectly, to do harm to Hebert.
Delores Thibodeaux, a bartender at the Cock of the Bayou Lounge, testified that on the night of the shooting she did not see Hebert and Angelle talk to each other. Further she stated that Angelle had made no threats to harm Hebert nor was she aware that Angelle had a concealed weapon. Karen Sue Fondren, who also worked at the Lounge, testified that although she was not working on the night of the shooting, she was present that night. She stated that she thought Angelle was drunk, but not to the point where he should have been cut off, that no threats had been made, and that she had no knowledge that he had a gun.
Willie Meche, who was with Hebert on the night of the shooting, testified that Hebert and Angelle did not speak to each other before the shooting, that no threats had been made, and that he was not aware that Angelle carried a gun.
Angelle, asserting that he acted in self defense, testified that he and Hebert had argued on numerous occasions, and that because of all the threats that Hebert had made, he was afraid that Hebert would one day hurt him. Angelle further stated that no one knew he was carrying a gun that night and that he did not go looking for Hebert that night. Also, Angelle admitted to drinking that night but testified that he knew what he was doing.
Hayes was not present when the shooting occurred. He left half an hour earlier to go frogging. While visiting with his *836 customers before leaving, he spoke briefly with both men. Neither mentioned the other. Nothing unusual was going on. He did not think Angelle was drunk. He did not know that Angelle was carrying a gun.
We have thoroughly reviewed the trial record. Upon that review we find that the trial judge was correct in granting the JNOV. Hebert's case against Hayes was based on the proposition that Hayes should have known the shooting was going to occur. The trial record shows that no one ever took Angelle seriously. Hebert himself explained that the reason he referred to Angelle as Barney Fife was because he never took Angelle seriously. When asked on cross-examination why, then, Hayes should have taken Angelle seriously, Hebert's riposte was that Hayes had a $300,-000 liability policy. The record shows that Angelle was never taken seriously by those who knew him, that he and Hebert had argued constantly for 30 years and that, although direct threats had been made in the past, neither had physically attacked the other or attempted to do so. Even when he was confronted by Angelle with gun in hand, Hebert did not take him seriously. On the night of the shooting Hayes visited with both men and neither mentioned the other. There was nothing out of the ordinary in their conduct. Reasonable persons, applying the law to these facts, could reach no other conclusion than that Hayes was totally unaware of Angelle's intentions, and that Hayes could not have known that Angelle was thinking about shooting Hebert that night.

II.
Angelle's blood alcohol level was .17%. The trial judge would not let the results of the blood alcohol test go to the jury. Hebert assigns this ruling as error.
The trial judge correctly ruled that no foundation at all had been laid for the admission of the test result. Additionally, the trial judge believed that the probative value was far outweighed by the danger of unfair prejudice. We find no error in this ruling.
The degree of Angelle's intoxication would have been significant here only if there had been evidence that the risk that Angelle would harm Hebert increased proportionately the more he drank. There was no such proof. So far as the record shows, the encounters between Angelle and Hebert always took place in a bar. That was where they met. They did a lot of drinking together. They had never hurt each other before. Therefore, in the context of this case, unless Hayes knew or should have known that the more Angelle drank, the more likely it became that he was going to shoot Hebert, there would have been no reason for Hayes to be concerned about how much beer Angelle was drinking.
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. La.C.E. art. 403. A trial judge is granted a great deal of discretion in assessing the probative value of evidence. State in the Interest of Miles, 441 So.2d 61 (La.App. 3rd Cir.1983). Here, admission of the test results would have informed the jury that Angelle was legally intoxicated. The preponderance of the evidence showed that he was behaving no differently from the way he normally behaved in bars. His behavior did not indicate a state of dangerous intoxication. He was exhibiting no belligerence. Therefore, we cannot say that the trial judge abused his discretion in ruling that the test result was inadmissible in this jury trial.

III.
The trial court let the town of Henderson out of the case before trial on a motion for summary judgment. The evidence at trial did not alter the undisputed facts before the judge at the summary judgment hearing. The summary judgment evidence showed conclusively that Hayes, the chief of police, did not know nor should he have known that Angelle intended to harm Hebert. The trial judge properly granted summary judgment.

*837 IV.
The plaintiff finally protests the dismissal by summary judgment of the state of Louisiana as a party defendant. The plaintiff had sued the state on the theory that it was liable for the torts of Angelle in his capacity as a constable of the Parish of St. Martin.
There was no error in the trial court's ruling. Even had Angelle committed this tort during the course and scope of his employment, the state could not be liable in this case. La.R.S. 42:1441 A. The state's non-liability, vicariously, for the torts of local officials is further nailed down by Act 451 of 1985, now La.R.S. 42:1441.4. Although Act 451 of 1985 was passed after the shooting in this case, it was clearly interpretive legislation, and therefore retroactive. For what constitutes interpretive legislation, see La.R.S. 42:1441.4(3), and this court's opinion in St. Paul Fire & Marine Ins. Co. v. Smith, 596 So.2d 272 (La.App. 3rd Cir.1992).
For the foregoing reasons the judgment of the trial court is affirmed. The costs of this appeal will be paid by the appellant.
AFFIRMED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.