PLOTKIN, Judge.
The principal question in this case is whether a private common carrier owes a duty to prevent the assault and molestation of third persons at the hands of bus passengers. Finding that the private carrier does owe such a duty, we reverse the trial court judgment which granted a motion for summary judgment in favor of the carrier, defendant Hotard Coaches, Inc.
*109 A. Facts
On July 18, 1987, the plaintiffs, Brigitte Luekette and Dawn Halligan, went to a New Orleans restaurant and lounge, Bart’s on the Lake. After attempts to meet a friend employed by Bart’s had failed, the plaintiffs decided to leave after staying approximately 15 minutes. While walking toward their car, they were approached by three white males, participants in a bachelor party. At this point, Ms. Halligan was picked up by one of the males, who threw her over his shoulder and carried her onto a bus owned and operated by Hotard Coaches, where the other participants in the bachelor party were gathered. The other plaintiff, Ms. Luekette, followed Ms. Halligan onto the bus. Although the parties agree on the facts up to this point, the subsequent events are subject to controversy.
By deposition, Ms. Luekette asserted that Ms. Halligan started protesting and asking for help after she was picked up. Additionally, according to Ms. Luekette, the other males they encountered while en route to their car attempted to grab her in an attempt to take her on the bus. Ms. Luekette testified that as Ms. Halligan was being carried onto the bus against her will, she pled with the bus driver to have the men release her friend. Ms. Luekette claims that the driver replied, “Relax baby, they’re not going to hurt you. They’re not going to hurt you.” Ms. Luekette claims that she had one foot in the door and one in the parking lot when she was pulled onto the bus with Ms. Halligan and they were molested.
Plaintiffs assert that they were unwillingly touched and grabbed by various persons taking part in the bachelor party, and that many of the men dropped their pants, exposing their genitals. This all occurred in a one- to three-minute time span, which came to an end when the plaintiffs were helped to exit the bus by an unknown member of the party. The bus never left the parking lot during the occurrence.
The bus driver, Mr. Gougisha, testified by deposition that he did see Ms. Halligan carried onto the bus, but he claims that he heard no protest from either of the plaintiffs until after they were both on the bus for approximately one minute. Gougisha did testify that the bus was very loud, and that he may not have heard any cries for help. However, Gougisha claims that he did hear one of the women scream as he was preparing to leave the parking lot. He claims that he stopped the bus at that point and that both of the girls exited. Gougisha said that the plaintiffs appeared mad. Other testimony revealed that both girls were crying at this point.
At the time of the incident, Gougisha, a black male, was driving a bus which was carrying approximately 60 white males, although the bus was equipped with only 40 seats. Gougisha testified that it was his first driving assignment, and that Hotard did not give him any special instructions on how to handle a bachelor party. Additionally, Gougisha said that he was intimidated by the size of the crowd on the bus, especially since the riders were drinking and getting rowdy. During the course of the evening, the bus made stops at various bars, as well as an initial stop to pick up a keg of beer, which remained on the bus the entire evening.
When questioned about the incident, Gougisha replied many times that he either could not recall or did not remember certain details. Gougisha admitted that he was intimidated because he was driving a bus which was overloaded with rowdy, intoxicated white males and that Gougisha was afraid to intervene when the assaults took place.
On March 14, 1991, Hotard filed an exception of no cause of action to the plaintiffs’ petition, claiming that the petition contained no substantive allegations whatsoever concerning negligent conduct on the part of Hotard. In the alternative, Hotard requested summary judgment on the grounds that it had no duty under the law which could give rise to any liability on its part. Additionally, Hotard claims that the record contains no proof that any act on its part caused the plaintiffs’ alleged damages, an essential element of the plaintiffs’ claim.
*110 The matter came before the trial court on May 3, 1991, for a hearing on the defendant's motion. On May 28, 1991, the trial court granted a summary judgment against the plaintiffs, Ms. Luckette and Ms. Halli-gan, dismissing their claim against Hotard with prejudice at their cost.
B. Standard for Reviewing Trial Court’s Grant of Motion for Summary Judgment
When reviewing a trial court decision granting a motion for summary judgment, appellate courts consider the evidence de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342, 345 (La.1991). Thus, the appellate court must make an independent determination of whether “the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B). Thus, a trial court judgment granting a motion for summary judgment must be reversed unless the reviewing court finds that the mover proved both of the following elements: (1) no genuine issues of material fact exist, and (2) the mover is entitled to judgment as a matter of law. Chaisson v. Domingue, 372 So.2d 1225, 1227 (La.1979); Transworld Drilling v. Texas General Petroleum Co., 524 So.2d 215, 217 (La.App. 4th Cir.1988). Likewise, a trial court judgment denying a motion for summary judgment should be reversed if the appellate court finds that the moving party did prove the two elements listed above. In both instances, all evidence and inferences drawn from the evidence must be construed in the light most favorable to the party opposing the motion, in this case, the plaintiffs. Schroeder, 591 So.2d at 345. Additionally, all allegations of the party opposing the motion must be taken as true and all doubt must be resolved in their favor. Id.
The defendant claims that the trial court judgment dismissing the plaintiffs’ case is correct because it had no duty to protect the plaintiffs from assault by the passengers on the bus. If the defendant had no duty to protect the plaintiffs from assault, none of the contested facts in this case are material to the issue currently before the court. Thus, determination of whether the trial court properly granted the defendant’s motion for summary judgment turns on whether Hotard owed the plaintiffs a duty. If Hotard had no duty to the plaintiffs, the trial court judgment is correct. However, if Hotard did owe the plaintiffs a duty, the contested facts become material to whether Hotard breached that duty.
C. Existence of a Duty
The plaintiffs claim that they can prove at trial that Hotard “was negligent and failed to adhere to even the lowest standard of care,” listing 15 “non-exclusive particulars” in support of their argument. However, the plaintiffs basically argue that Hotard owed them a duty to protect them from the assault based either on its status as a common carrier or its status as a business operation.
1. Duty of Common Carrier
In 1945, the Louisiana Supreme Court imposed upon common carriers the highest degree of care towards its passengers. Gross v. Teche Lines, 207 La. 354, 21 So.2d 378 (1945). However, Hotard argues that the duty imposed on common carriers does not require it to prevent intentional torts of third parties, and that the duty thus does not apply in the instant case. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981), dissenting opinion 435 So.2d 423 (La.1983).
We agree with Hotard’s contention that the duty of common carriers does not apply in this case, but for a different reason. The cases cited by the parties apply to fare-paying passengers who were assaulted and battered on a public common carrier.
Hotard is a private common carrier, not a public common carrier. The difference is important. Defendant leases its buses for private transportation function rather than making its buses available for public trans *111 portation purposes. Hotard operates a business whereby it provides a qualified driver, as well as insurance, for a specific time and function for a fee. Thus, a different standard from that imposed on public common carriers applies to Hotard. Because Hotard essentially operates a private business enterprise, the law applicable to private businesses is more appropriately applied in this case than that applicable to common carriers.
2. Duty of Business Enterprises
Most of the law on the duty of business enterprises applies specifically to protecting patrons from assault by third parties, employees, or fellow patrons, which is not the factual scenario in the instant case. This case involves a possible duty on the part of a business enterprise to protect third parties who have no relationship to the business enterprise from the actions of its patrons. Nevertheless, we believe that the jurisprudence establishing the duty to patrons is pertinent to this case.
Generally, a business enterprise’s duty to protect patrons was summarized by this court in Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir.1973), as follows:
[Wjhile the proprietor of a public place is not the guarantor of his patrons’ safety, he owes them a duty to exercise reasonable care to protect them from harm at the hands of a fellow-guest or at the hands of his employees; such a proprietor owes a duty to guests to protect them from insult, annoyance and danger, and his guests have a right to rely on the belief they are in an orderly house and are protected from injury by the exercise of reasonable care for their safety by the operator of the establishment or his representative.
Id. at 344. A business enterprise or its employee has “a duty to act at the time it knew or should have known of the potential danger presented.” Ballew v. Southland Corp., 482 So.2d 890, 893 (La.App.2d Cir.1986). In fulfilling this duty, the business is required to call the police in the event of a disturbance, if time permits. Id.; Anderson, 284 So.2d at 344.
From the above principles, this court summarized the duty of business proprietors in Smith v. Walgreens Louisiana Co., Inc., 542 So.2d 766 (La.App. 4th Cir.1989), as follows:
Generally, commercial establishments in Louisiana have two responsibilities to their invitees. First, “any business which invites the company of the public must take reasonably necessary acts to guard against the predictable risk of assaults.” One jurisprudential exception to this rule occurs when the plaintiff’s injuries are caused by the unforeseeable or unanticipated criminal acts of third parties. Secondly, once a Louisiana business has voluntarily assumed a duty of protection, that duty “must be performed with due care.”
Id. at 767. (Citations omitted.)
Thus, Hotard had a general duty to “guard against the predictable risk of assaults” related to the operation of its business enterprises. The fact that the victims of the assault were not paying customers does not prevent that duty from flowing in their direction, especially under the circumstances of this case. The imposition of the duty is an incident of doing business in this state.
In the instant case, Hotard was hired to transport 60 males to several alcohol outlets for a fee. The driver allowed the passengers to bring a keg of beer onto the bus. The purpose was to allow the passengers to have a bachelor party, partly on the bus, without having to drive from bar to bar. Hotard was aware that its passengers intended to consume intoxicating beverages during the party and even permitted the passengers to bring a keg of beer on board the bus. Despite knowledge of all of the above, Hotard then assigned an inexperienced driver to operate the bus. In fact, Gougisha testified that the bachelor party was his first assignment for Hotard.
Hotard knew or should have known that a high degree of risk was associated with this lease of its equipment and personnel. It is common knowledge that bachelor par *112 ties create specific foreseeable risks to persons in the vicinity, which are recognizable in advance and thus call for definite precautions. When Hotard agreed to perform this function, it was or should have been aware of the foreseeable risk of intoxication, which foreseeably leads to aberrant, excessive behavior. Intoxicated persons are capable of unrestrained conduct, which can easily cause harm to third parties who come into contact with them. Once Hotard was entrusted with the care of potentially dangerous persons capable of any type of behavior toward third parties, Hotard assumed a duty to protect those third parties from the aberrant behavior of those in its custody. Because Hotard knowingly undertook the transportation of intoxicated persons, it undertook a duty to protect third parties from risks occurring on or connected with the transportation, a “duty to protect against the predictable risks of assaults.” Smith, 542 So.2d at 767. That duty is broad enough to apply to the plaintiffs in the instant case.
D. Conclusion
Because the trial court improperly concluded that the defendant in the instant case had no duty to the plaintiffs, the trial court judgment granting Hotard’s motion for summary judgment was manifestly erroneous. The defendant is not entitled to judgment as a matter of law. Additionally, the contested factual issues are material to the question of whether Hotard breached its duty to protect the plaintiffs from the risk of assault. Accordingly, the judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.