WHIPPLE, C.J.
12This matter is before us on appeal by defendants, Lard Oil Company (“Lard”), Federated Mutual Insurance Company (“Federated Mutual”), C-Store Properties, L.L.C., and Jiffy Mart, Inc. (collectively “defendants”), from a summary judgment of the trial court, dismissing plaintiffs claims against Hotard Coaches, Inc. (“Ho-tard”), with prejudice. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 30, 2012, plaintiff, Virginia Stafford, was working as an “extra” on a movie set as contracted by Talent Associates, Inc. Plaintiff was transported in one of two Hotard buses hired by Hazardous Productions, LLC to transport the movie extras from the AMC Elmwood Palace 20 movie theater parking lot in Harahan, Louisiana, to a movie filming location in Hammond, Louisiana. While exiting the bus in the Exxon “On The Run” service station parking lot at 200 South Gate Street in Hammond to proceed to a “holding spot,” plaintiff tripped and fell in what she contends was a hole with broken concrete and exposed rebar, resulting in an injury to her right ankle.
As a result of this accident, plaintiff filed suit against Lard and its insurer, Federated Mutual, Jiffy Mart, Inc., Hotard, and C-Store Properties, L.L.C.[1] On December 23, 2015, Hotard filed a motion for summary judgment contending that it had ful *1261 filled its duty to transport plaintiff safely and that it owed no legal duty to protect plaintiff from hazards at the point of dis-embarkment that were unknown to Ho-tard. Hotard contended that because plaintiff cannot prove this essential element of liability, her claims against Hotard should be dismissed.
|Jn support of its motion for summary judgment, Hotard attached: its charter instructions and itinerary; deposition excerpts of driver Charles Bretz; plaintiffs petitions for damages; a copy of a photograph of the parking lot; excerpts of plaintiffs June 17, 2013 deposition; excerpts of plaintiffs January 8, 2014 deposition; and interrogatory answers and requests for production of documents filed by defendants, Lard Oil and Federated Mutual.
In support of their opposition to Ho-tard’s motion for summary judgment, defendants attached: plaintiffs medical records from North Oaks Medical Center; deposition excerpts of driver Charles Bretz; plaintiffs medical records from the Bone and Joint Center of Metairie; excerpts of plaintiffs January 8, 2014 deposition; plaintiffs petitions for damages; plaintiffs medical records from Advanced Rehabilitation of Metairie; plaintiffs medical records from the Orthopedic Center for Sports Medicine and Reconstructive Surgery; plaintiffs medical records from Louisiana Pain Specialists; plaintiffs medical records from Jefferson Neurobehavioral Group; and deposition excerpts of Jiffy Mart’s representative, Johnny Milazzo.
In support of her opposition to Hotard’s motion for summary judgment, plaintiff attached her own affidavit, as well as: Ho-tard’s charter instructions and itinerary; a location parking agreement; photographs of the Exxon “On The Run” service station and parking lot; photographs of the exposed rebar; an audio recording of plaintiffs interview; excerpts of her June 17, 2013 deposition; excerpts of her January 8, 2014 deposition; deposition excerpts of driver Charles Bretz; and her medical records.
Hotard’s motion for summary judgment was heard by the trial court on January 25, 2016. At the hearing, counsel for Ho-tard objected to the introduction of plaintiffs medical records by plaintiff (Exhibit 3) and the defendants (Exhibits A, C, F, G, H, and I) in support of their oppositions to summary judgment. RHotard’s objection was sustained by the trial court. Following the hearing, the trial court signed a judgment on February 19, 2016, sustaining Hotard’s objections to the introduction of excerpts of plaintiffs certified medical records, granting Hotard’s motion for summary judgment, and dismissing plaintiffs claims against Hotard with prejudice.
Defendants filed the instant appeal of the trial court’s February 19, 2016 judgment, contending that the trial court’s judgment should be reversed.[2] On appeal, the defendants contend that the trial court erred in:
1. Excluding plaintiffs certified medical records and failing to consider them in connection with its ruling;
2. Ignoring the negligence test outlined in Louisiana jurisprudence for carri *1262 ers such as Hotard and holding that Hotard had no duty herein;
3. Failing to recognize that Hotard assumed a duty to inspect the premises for potential defects and that issues of material fact exist regarding whether this duty was assumed and whether Hotard negligently breached that duty; and
4, Granting summary judgment where issues of material fact exist regarding where the subject accident occurred and whether Hotard provided plaintiff with an exit from the bus that was reasonably safe.
SUMMARY JUDGMENT
A motion for summary judgment shall be granted only if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is [r,entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B)(2).[3] In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Willig v. Pinnacle Entertainment, Inc., 2015-1998 (La.App. 1st Cir. 9/16/16), 202 So.3d 1169, 1172.
The burden of proof is on the mover. See LSA-C.C.P. art. 966(C)(2). However, if the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment as a matter of law. LSA-C.C.P. art. 966(C)(2); Temple v. Morgan, 2015-1159 (La.App. 1st Cir. 6/3/16), 196 So.3d 71, 76, writ denied, 2016-1255 (La. 10/28/16), 208 So.3d 889.
Whether a particular fact in dispute is material for purposes of summary judgment can be seen only in light of the substantive law applicable to the case. Gaspard v. Graves, 2005-1042 (La.App. 1st Cir. 3/29/06), 934 So.2d 158, 160, writs denied, 2006-0882, 2006-0958 (La. 6/16/06), 929 So.2d 1286, 1289.
In the instant case, plaintiff contends that Hotard is liable for her injuries herein. Accordingly, we look to the duty-risk analysis adopted by Louisiana courts in determining whether liability exists under the facts of a particular case. Brewed6 v. J.B. Hunt Transport, Inc., 2009-1408, 2009-1428 (La. 3/16/10), 35 So. 3d 230, 240. In order for liability to attach under a duty-risk analysis, a plaintiff must prove: (1) duty; (2) breach; (3) causation; and (4) damages.[4] Roberts v. Rudzis, 2013-0538 *1263 (La.App. 1st Cir. 5/28/14), 146 So.3d 602, 608-609, writ, denied, 2014-1369 (La. 10/3/14), 149 So.3d 797. The existence of a legal duty and a breach of that duty are prerequisites to any determination of fault. Seals v. Morris, 410 So.2d 715, 718 (La. 1981)(on rehearing). A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability, Mathieu v. Imperial Toy Corporation, 94-0952 (La. 11/30/94), 646 So.2d 318, 326.
Although the determination of whether to assign a legal duty is fact-specific, the issue of whether there is a duty ultimately is a question of law. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 2002-1376 (La.App. 1st Cir. 5/9/03), 849 So.2d 622, 627, writ denied, 2003-1579 (La. 10/3/03), 855 So.2d 315. The inquiry is whether plaintiff has any law-statutory, jurisprudential, or arising from general principles of fault-to support her claim. Fredericks v. Daiquiris & Creams of Mandeville, L.L.C., 2004-0567 (La.App. 1st Cir. 3/24/05), 906 So.2d 636, 639, writ denied, 2005-1047 (La. 6/17/05), 904 So.2d 706.
DISCUSSION
At the outset, we note that when a judgment dismisses one of several cumulated claims by the plaintiff, the plaintiff must appeal that adverse judgment to obtain affirmative relief. Nunez v. Commercial Union Insurance Company, 2000-3062 (La. 2/16/01), 780 So.2d 348, 349 (per curiam). When plaintiffs fail to appeal the dismissal of their action, the judgment of dismissal acquires thej7 authority of a thing adjudged. Nunez v. Commercial Union Insurance Company, 780 So.2d at 349. In such cases, the filing of an appeal from the judgment of the trial court by another party only brings up on appeal the portions of the judgment that were adverse to that party. Nunez v. Commercial Union Insurance Company, 780 So.2d at 349.
In the instant case, where plaintiff did not appeal the trial court’s judgment dismissing her claims against Hotard, nor did plaintiff answer the defendants’ appeal, the summary judgment dismissing plaintiffs claims against Hotard acquired the authority of a thing adjudged, is now final between the parties, and is not subject to reversal by this court. See Grimes v. Louisiana Medical Mutual Insurance Company, 2010-0039 (La. 5/28/10), 36 So.3d 215, 217 (per curiam); Bethley v. Sheybani, 2010-0713, p. 5 (La.App. 1st Cir. 10/29/10), 56 So.3d 466 (unpublished). Nevertheless, while Hotard cannot be cast in judgment on plaintiffs main demand, by the filing of a successful appeal, the remaining defendants may reduce their liability to plaintiff, based upon the principles of comparative fault set forth in LSA-C.C. art. 2323(A), by establishing the fault, negligence or breach of care by Hotard. See Grimes v. Louisiana Medical Mutual Insurance Company, 36 So.3d at 217; Bethley v. Sheybani, 2010-0713 at p. 5, 56 So.3d 466; Cotton v. Kennedy, 2015-1391 (La. App. 1st Cir. 9/19/16), 2016 WL 5061113(unpublished).
Assignment of Error Number One
In their first assignment- of error, defendants contend that the trial court erred in sustaining Hotard’s objection to the admission of plaintiffs certified medical records after finding that the medical records were not relevant to the issue raised in- Hotard’s motion for summary *1264 judgment, Le., whether' or not Hotard had a legal duty to plaintiff herein. In support of their opposition to Hotard’s motion for summary judgment, defendants attached copies of plaintiffs certified medical| s records, which they contend include statements regarding where the incident occurred, and as such, are relevant to whether Hotard may bear any liability herein.
Hotard contends that plaintiffs medical records are not relevant to the determination of the purely legal question presented of whether Hotard had a legal duty to protect plaintiff from defects on property it did not own, when it is uncontested that Hotard had no knowledge of the alleged defect. Hotard further counters that the version of LSA-C.C.P. art. 966 in effect at the time of the filing of Hotard’s motion for summary judgment did not provide for the filing of medical records in support of or in opposition to summary judgment. On review, we agree.
As set forth above, at the time of the filing of Hotard’s motion for summary judgment, LSA-C.C.P. art. 966(B)(2) provided that a motion for summary judgment shall be granted only “if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.” (Emphasis added.) Because plaintiffs medical records do not fall within any of the categories set forth in Articles 966 and 967 as evidence properly considered on a motion for summary judgment, we conclude that they could not be relied on to support defendants’ motion for summary judgment.[5] See also Gooding v. Merrigan, 2015-200 (La. App. 5th Cir. 11/19/15), 180 So.3d 578, 582-584 (where the court found that any details plaintiff may have given medical providers about the accident, which were contained in his medical records, were properly excluded as hearsay on summary judgment).
| ¡Accordingly, we find the trial court properly excluded plaintiffs medical records, and thereby find no merit to this assignment of error.
Assignments of Error Numbers Two and Four
In these assignments of error, defendants contend that the trial court erred in finding that Hotard had no legal duty herein and in granting Hotard’s motion for summary judgment. In the proceedings below, Hotard argued, and the trial court agreed, that it had no “duty to protect the [pjlaintiff from unknown alleged defects on third party property.” In granting summary judgment, the trial court found that Hotard had “no legal duty to protect plaintiff from [an] unknown point of disembarkment” and that there was no “basis in law for holding [Hotard] liable for possible defects in premises it did not own.” In finding no duty was owed, the trial court noted that the area at issue “was owned by other people. In fact, [Hotard] did not have any kind of ownership in it. Couldn’t police it. Couldn’t see if there were defects there, any possible defects. The bus driver '... was a driver. Not a parking lot inspector.” The trial court further stated that neither the plaintiff nor the other defendants presented the court “with any law showing Hotard had a duty outside the ordinary *1265 duty of a common carrier” and that as such, Hotard “didn’t have any duty to protect the plaintiff from [an] unknown alleged defect on third party property.”
While the trial court framed Hotard’s duty, or lack thereof, from a premises liability or ownership perspective, in our view, the more appropriate inquiry is whether Hotard had a duty to provide passengers with a reasonably safe place to exit, and if so, whether there was any evidence to show that the duty was breached.
As reflected in the jurisprudence, a public common carrier is held to the highest degree of care, diligence, and skill in receiving passengers, conveying them to their destination and setting them down safely as the means and character of the conveyance and circumstances will permit. Deason v. Greyhound Corporation, 106 So.2d 348, 360 (La. App. 1st Cir. 1958); Luckette v. Bart’s on the Lake, Limited, 602 So.2d 108, 110-111 (La. App. 4th Cir.), writ denied, 608 So.2d 178 (La. 1992). Once a plaintiff sets forth a case of prima facie liability, the burden then shifts to the public common carrier to exculpate itself from liability. See Whitley v. Regional Transit Authority, 2005-0433 (La. App. 4th Cir. 7/20/05), 913 So.2d 169, 172; Munar v. State Farm Insurance Company, 2007-611 (La. App. 3rd Cir. 12/19/07), 972 So.2d 1273, 1276.
Moreover, once a passenger freely disembarks at his chosen destination free from harm, his status as a passenger, and the public carrier’s contract to transport for hire, ceases. Ricks v. City of Monroe, 44,811 (La. App. 2nd Cir. 12/9/09), 26 So.3d 858, 862, writ denied, 2010-0391 (La. 5/28/10), 36 So.3d 247. At that point, the public carrier only owes such person the duty of ordinary care, and is under no duty to warn the former passenger of a danger which is apparent, obvious, and known to every person in good mind and sense. Ricks v. City of Monroe, 26 So.3d at 862; see also Deason v. Greyhound Corporation, 106 So.2d at 361.
Here, however, Hotard is a private common carrier, not a public common carrier. See Luckette v. Bart’s on the Lake, Limited, 602 So.2d at 110. Thus, the above-noted heightened duty applicable to public common carriers is not applicable to Hotard herein. As explained by our brethren in the Fourth Circuit, the critical difference between public and private common carriers such as Hotard is:
[Hotard] leases its buses for private transportation function rather than making its buses available for public transportation purposes. Hotard operates a business whereby it provides a qualified driver, as well as insurance, for a specific time and function for a fee. Thus, a different standard from that imposed on public common carriers applies to Ho-tard.
Luckette v. Bart’s on the Lake, Limited, 602 So.2d at 110-111.
_JjjWhere the heightened duty applicable to public common carriers is not applicable, a standard of general negligence has been applied. See Whitley v. Regional Transit Authority, 913 So.2d at 172 and Manuel v. Regional Transit Authority, 2009-1256 (La. App. 4th Cir. 5/12/10), 36 So.3d 1131, 1134;[6] see also Ellis v. Louisiana-I Gaming, 2005-993 (La. App. 5th Cir. 4/25/06), 930 So.2d 186, 189.[7] *1266 Thus, as a private common carrier, Hotard was required to meet the general standard of care, as opposed to the heightened standard for public common carriers. The general negligence test involves whether the place the passenger is compelled to exit is reasonably safe. Whitley v. Regional Transit Authority, 913 So.2d at 172. Thus, on review, to the extent that defendants contend that Hotard owed, a duty to provide a reasonably safe place to exit, we agree.[8]
Having so found, we must next determine whether defendants established that material issues of fact exist regarding whether Hotard breached this duty.
In support of its motion for summary judgment, Hotard presented evidence establishing that the bus plaintiff was traveling on was one of two buses chartered by Hazard Productions to transport movie extras from Elmwood Boulevard in Harahan to Hammond.[9] According to the charter itinerary, Hotard was to deliver the extras at the Columbia Theater at 220 East Thomas Street in Hammond. According to the deposition testimony of its driver, Charles Bretz, also introduced in support of Hotard’s motion for summary judgment, when the buses arrived inlia Hammond, they were only able to get about a half a block from the theater, which was barricaded off due to filming. At that point, a Hazard Production representative who was on the bus directed Bretz to drive two blocks away to wait on standby. After waiting for approximately an hour, Bretz was then directed to an empty parking lot next to a service station to drop off the movie extras. According to Bretz, it was customary for him to get out of the bus and inspect the area around the bus for any kind of hazard. He further testified that facilitating or assisting with the disembarkation of passengers was part of his job.
Bretz testified that by the time they began offloading, it was around 7:00 a.m. Bretz testified that as he exited the bus to open the external storage bins, he did not encounter any rough surfaces or anything that would cause him concern about the ability of his passengers to safely exit the bus and traverse the parking lot. Bretz further stated that he would have surveyed the area to determine if he could offload passengers safely and that he identified no hazards that alerted him to the possibility that somebody- could have a problem safely traversing the parking lot. Bretz testified that while he was opening the luggage bins on the side of the bus, plaintiff, who was one of the first passengers to get off of the bus, twisted her ankle. According to Bretz, plaintiff was attended to by production company personnel. Bretz further stated that based on his observations, the other passengers offloaded with no difficulty. Bretz - testified that during the entire time he was off of the bus, and then as he went back onto the bus, which was approximately ten minutes, he did not see any defects in the parking lot that would have created a hazard. Bretz stated that when he got back on the bus, he had to step in the same area that plaintiff stepped in when she twisted her ankle and fell, and that he dkh not notice any holes or defects at that specific location that would have created a hazard for her or any other passenger.
*1267 • 11sHotard also introduced excerpts of plaintiffs deposition testimony in support of its motion for summary judgment. In a deposition taken on June 17, 2013, plaintiff testified that they were let off of the bus and were lined up to head to the holding area. She stated that she “got off of the bus, took a couple of steps and hit the ground.” When asked if she saw a hole before she fell, plaintiff replied, “No, sir it was still dark out, night, and I was looking at the person in front of me instead of looking down.” Plaintiff was further questioned in a subsequent deposition taken on January 8, 2014, about how far she was from the bus when she fell, in the following colloquy:
Q. Okay. I want to be sure that I understand your rendition of how the fall occurred. Was—was it your first step off of the bus?
A. No.
Q. All right. How many steps did you take?
A. I don’t know.
Q. How far from the bus were you when you fell?
A. Not very far at all.
Q. Can you give me an estimate in feet?
A. No. I—I wasn’t—it didn’t occur to me to pay attention. I just was off the bus walking pretty quickly. After I was on the bus, I was on the ground.
Q. Okay. What you told me earlier is that you stepped down and you felt this pain in your ankle. You were actually walking when—
A. I was walking. When I say I stepped down, the ground was different when I put my foot down because of the broken concrete and the rebar sticking out.
Q. Did you actually see the broken concrete and the rebar sticking out?
A. No, not until I was already in it and on the ground.
With reference to the location of the “hole,” plaintiff testified that it “wasn’t right immediately outside of the bus, but it wasn’t far from the bus, if that makes Jásense.” In her testimony, plaintiff agreed that she successfully got off of the bus, began walking toward the holding area for cast, and in less than five steps she put her foot down, felt pain in her ankle, and fell. Based on the evidence set forth, Hotard contends that it complied with any duty it may have owed to plaintiff to provide a reasonably safe place to exit.
In response to Hotard’s showing on summary judgment, the defendants cited excerpts. of the deposition testimony of Charles Bretz; excerpts of plaintiffs January 8, 2014 deposition; plaintiffs petition for damages; and deposition excerpts of Jiffy Mart’s representative, Johnny Milaz-zo. In addition, plaintiff relied on her affidavit; Hotard’s charter instructions and itinerary; the location parking agreement; photographs of the Exxon “On The Run” station and parking lot; photographs of the exposed rebar; an audio recording of plaintiffs interview; excerpts of her June 17, 2013 deposition; excerpts of her January 8, 2014 deposition; and excerpts of the deposition of Bretz.
Under the general negligence standard applicable herein, Hotard was required to provide plaintiff with a reasonably safe place to exit the bus. See Whitley v. Regional Transit Authority, 913 So.2d at 172. By plaintiffs own admission, she had exited the bus and was “walking pretty quickly” when she fell. In her deposition testimony, she clearly stated that she did not fall on her first step off of the bus. In her affidavit, she attested that she had taken “between two and five steps” before stepping into a hole created by the broken concrete. Further, in her recorded inter *1268 view, she stated that she was walking in a line looking at the back of the guy in front of her when she fell and that she had only taken “a few” steps off of the bus, no more than five.
On review of the evidence properly set forth in opposition, we find that defendants failed to provide any evidence to create an issue of material fact as to whether Hotard breached its duty herein. Even applying the heightened standard] of care for public common carriers, ha, once a passenger freely disembarks at his chosen destination free from harm, his status as a passenger, and the public carrier’s contract to transport for hire ceases, we find there has been no showing that Hotard breached its duty herein. See Ricks v. City of Monroe, 26 So.3d at 862; Deason v. Greyhound Corporation, 106 So.2d at 363 (where this court held that Greyhound had completely discharged its duty as a common carrier when it “safely unloaded Deason on the west side of the Scenic Highway” before Deason was struck by a truck while attempting to cross Scenic Highway).
On de novo review of the record, we conclude that the evidence before us shows that, by her own admission, plaintiff had exited the bus and was walking in a line following other movie extras, as led by the production crew, to a holding area at the time she fell. We further conclude that defendants failed to counter with any evidence to show that they can establish at trial that Hotard breached its duty to plaintiff herein or to create an issue of material fact regarding the negligence of Hotard. Otherwise stated, the evidence set forth in opposition to Hotard’s motion for summary judgment failed to create an issue of material fact regarding the breach of any duty owed by Hotard to plaintiff. See Whitley v. Regional Transit Authority, 913 So.2d at 172.
Accordingly, we agree that on the record before us, Hotard was entitled to summary judgment in its favor as a matter of law. Thus, we find no merit to these assignments of error.
CONCLUSION
For the above and foregoing reasons, the trial court’s February 19, 2016 judgment is hereby affirmed. Costs of this appeal are assessed to the defendants/appellants, Lard Oil Company, Federated Mutual Insurance Company, C-Store Properties, L.L.C., and Jiffy Mart, Inc.
AFFIRMED.
McClendon, J., concurs and assigns reasons.

. Plaintiff filed an original and five supplemental and amending petitions naming the various defendants. While ExxonMobil Corporation was named as a defendant in plaintiff’s original petition, it filed a motion for sum- *1261 maty judgment contending that pursuant to its franchise agreement with its distributor, Lard Oil Company, its distributor assumed all responsibility for maintaining all real property in connection with its operations and that ExxonMobil exercised no control over the premises, particularly the parking lot. By judgment signed on April 22, 2014, the trial court granted ExxonMobil’s motion for summary judgment, dismissing plaintiffs claims against ExxonMobil.

. Although plaintiff opposed Hotard’s motion for summary judgment in the proceedings below, plaintiff did not appeal the trial court’s dismissal of her claims against Hotard, nor did plaintiff answer the defendants’ appeal.

. Louisiana Code of Civil Procedure article 966 was amended and reenacted by Acts 2015, No. 422, § 1, with an effective date of January 1, 2016. The amended version of article 966 does not apply to any motion for summary judgment pending adjudication or appeal on the effective date of the Act; therefore, we refer to the former version of the article as applicable in this case. See Acts 2015, No. 422, §§ 2 and 3.

. More specifically stated, a plaintiff must establish that: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element): (2) the defendant failed to conform his conduct to the appropriate stan *1263 dard (the breach of duty element); (3) the defendant’s substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of liability or scope of protection element); and (S) actual damages (the damages element). Roberts v. Rudzis, 2013-0538 (La.App. 1st Cir. 5/28/14), 146 So.3d 602, 608-609, writ denied, 2014-1369 (La. 10/3/14), 149 So.3d 797.

. In so ruling, we acknowledge that, as amended, the current version of LSA-C.C.P. art. 966, applicable to all motions for summary judgment filed after January 1, 2016, provides that certified medical records may be filed in support of or in opposition to a motion for summary judgment. See LSA-C.C.P. art. 966(A)(4) and Acts 2015, No. 422, §§ 1-3. Notwithstanding the amendment, we pretermit the issue of whether these records would be relevant and admissible under the current version of the article.

. In Whitley v. Regional Transit Authority, 913 So.2d at 172, and Manuel v. Regional Transit Authority, 36 So.3d at 1134, the courts determined that the proper standard was general negligence where the Regional Transit Authority was statutorily precluded from being held to the heightened standard of care.

. In Ellis v. Louisiana-I Gaming, 930 So.2d at 189, the court discussed the distinction between casino and hotel shuttle buses from *1266 common carriers that offer transportation for hire to the public generally or indiscriminately, and found that a shuttle bus owed an ordinary standard of care in general negligence to its passengers, not a heightened duty that applied to fare-paying passengers.

. Given our finding concerning Hotard’s duty herein, we pretermit discussion of the defendants’ third assignment of error concerning whether Hotard assumed a duty.

. Approximately forty-five movie extras were on each bus.