607 So.2d 1 (1992)
Mildred L. HARRISON, Plaintiff-Appellant,
v.
Gardner CLARK, et al., Defendant-Appellee.
No. 24157-CA.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1992.
Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Edward L. Harrison, Ruston, for defendant-appellee.
Before LINDSAY, VICTORY and STEWART, JJ.
VICTORY, Judge.
Plaintiff, Mildred Harrison, appeals the trial court's dismissal of her wrongful death claim against Reverend Gardner Clark, the owner of a trailer park in which her son was murdered. We affirm.

FACTS
On July 11, 1989, Archard Harrison was shot and killed by Mark King in Clark's Trailer Park in Grambling, Louisiana. Harrison was not a resident of the trailer park, but frequently visited the area. The shooting occurred near the trailer of King's fiancee, Donna Lewis, with whom King had been living for nearly two months. King claimed that he shot Harrison because Harrison *2 threatened to enter the trailer and rape Lewis. Following a trial by jury, King was convicted of second degree murder in March 1990.
After King's criminal conviction, the victim's mother, Ms. Harrison, filed a civil suit against King and Clark for the wrongful death of her son. Ms. Harrison claimed that Reverend Clark was liable for damages because he knew or should have known of King's violent nature, and should have taken steps to either warn others of the danger or remove King from the trailer park.
Following a bench trial held on November 12, 1991 the trial court granted judgment in favor of Ms. Harrison against King in the amount of $100,300, but rejected her demands against Reverend Clark. Ms. Harrison now appeals the portion of the ruling which denied her claim against Clark. King has not appealed, therefore, the judgment against him is not before this court and is final.

DISCUSSION
Reverend Clark's only relationship with the individuals involved in the altercation was his status as the lessor of the lot upon which Lewis' trailer was located. He was not present at the time of the shooting, nor did he have any knowledge of a dispute between the parties. However, Ms. Harrison argues that Reverend Clark, as the owner of a business establishment, owed a duty to visitors of the trailer park, such as her deceased son, to provide a reasonably safe place to visit. In addition, she argues that Clark voluntarily assumed the responsibility of providing security, which was inadequate.
A business establishment owes a duty to its patrons to exercise reasonable care to protect them from injury. However, this duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management, or employees of a business have or should have knowledge of a third person's intended injurious conduct that is about to occur and which is within the power of the owner, management or employees to protect against, does the duty arise. Foster v. Colonel Sanders Kentucky Fried Chicken, Inc., 526 So.2d 252 (La.App.2d Cir.1988), writ denied 531 So.2d 483; Ballew v. Southland Corporation, 482 So.2d 890 (La.App.2d Cir.1986). If a business has voluntarily assumed a duty of protection, such as by hiring a security guard, this duty must be performed with due care. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
In the instant case, there is no evidence that Reverend Clark knew or should have known of the impending conduct or violent nature of King. Absent such a showing, he cannot be held liable for the unforeseeable criminal acts of a third person. See Foster v. Colonel Sanders Kentucky Fried Chicken, Inc., supra.
Reverend Clark, who lived in the trailer park, testified that he began noticing King around the area about one month prior to the murder. King stated that he moved in with Lewis two months before the shooting; however, he conceded that in the first month he kept odd hours. Other than one minor incident in which King was asked by Reverend Clark not to throw a wine bottle into a wooded area next to the trailer park, there is no evidence showing Clark had any trouble with King, nor that any of the residents of the trailer park contacted Clark complaining about King.
Reverend Clark stated that he never spoke with King, except for the incident involving the wine bottle and for ordinary exchange of greetings when they passed each other, nor did he have any reason to believe that King was a violent person. Although King had prior convictions for assault and DWI, Clark was unaware of this fact. Neither the perpetrator nor the victim of this crime had any contractual relationship with Reverend Clark. King was a guest of a resident and the victim was a visitor to the trailer park.
King stated that he bought the .22 caliber revolver that was used in the shooting about five days before the murder, and that he and friends would sometimes shoot the gun out the back door of Lewis' trailer *3 to test the gun and for target practice. However, there is no evidence that Clark was at home when the gun was fired, or that anyone brought these incidents to his attention. None of these facts suggest that Reverend Clark knew or should have known of King's impending conduct or potential for violence, therefore, Clark owed no duty to the victim to take steps to prevent King's unforeseeable criminal act.
Ms. Harrison also argues that Reverend Clark voluntarily assumed the responsibility of providing security for the area, and, because of the shooting, should be held liable for failing to provide adequate security. This assertion is based on the fact that Reverend Clark would sometimes walk around his trailer park. There were also infrequent occasions when Clark was called upon for domestic disputes and to help control loud tenants. However, when there was excessive noise or other major problems, Reverend Clark testified that he would call the police, although he only had to do this five or six times over a thirteen-year period.
The evidence does not suggest that Reverend Clark provided "police-like" protection. When Reverend Clark did inspect his property, there is no evidence that he carried a weapon, wore a security uniform or did anything which might lead someone to believe he was providing security for the area. It is not unusual for the owner of a trailer park, especially one who lives on the premises, to keep a watchful eye on his property. Such action cannot be equated with providing a security patrol, nor does it suggest a security patrol was needed.

DECREE
For the forgoing reasons, the judgment of the trial court dismissing plaintiff's demands against Reverend Clark is affirmed.
AFFIRMED.