638 So.2d 1168 (1994)
Tessie RHODES Rhodes & Kirby F. Rhodes, II, individually and on behalf of their Minor Child, Kirby F. Rhodes, III
v.
WINN-DIXIE LOUISIANA, INC.
No. 93 CA 1848.
Court of Appeal of Louisiana, First Circuit.
June 24, 1994.
*1169 Dexter Gary Houma, for plaintiffs and appellees, Tessie Rhodes, et al.
Carlos Lazarus, Jr., Houma, for defendant and appellant, Winn-Dixie, Louisiana, Inc.
Before LOTTINGER, C.J., and CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Defendant, Winn Dixie of Louisiana, Inc., (Winn Dixie) appeals from the jury's verdict which cast it with fifty per cent liability for the injuries sustained by plaintiff, Tessie Rhodes, as a result of an accident in defendant's store, wherein an employee of the store chased an alleged shoplifter. We affirm the jury's verdict.
There are two assignments of error presented by Winn Dixie: 1) The jury committed manifest error in finding defendant's conduct fell below the standard of care owed plaintiff and that this fault was the legal cause of her injuries; 2) The trial court erred in failing to sufficiently instruct the jury and in refusing the defendant's jury charges.
The facts as revealed by the record are as follows:
On December 30, 1991, Tessie Rhodes and her husband, Kirby travelled to the Prospect Avenue Winn Dixie store in Houma, Louisiana, in order to purchase some soup for Mrs. Rhodes' sick father. After entering the store, Mrs. Rhodes went to the aisle where the soup was located and Mr. Rhodes went to retrieve a carton of beer. The couple again met in the front of the store near the check-out counter. They engaged in conversation wherein Mr. Rhodes advised his wife that he was going to the bathroom and would return. Mr. Rhodes turned to leave, and as he did, he felt someone rub against his shoulder. His wife was, at the time, and unbeknown to Mr. Rhodes, thrown against the checkout counter where she suffered physical injuries.
Mr. Rhodes, unaware of his wife's injury and after observing a store employee chasing an unknown male subject, realized that this was an apparent shoplifting incident. Since he had formerly worked for this store and was familiar with the store personnel, Mr. Rhodes offered his assistance to apprehend the apparent shoplifter. The shoplifter was initially chased from the store by Richard Scott, Sr., the meat market manager. Mr. Scott initially saw the suspect in the meat department, as he secreted some meat products in his coat and attempted to flee the store.
Mr. Scott, Mr. Rhodes, and an unnamed bag clerk thereafter pursued the suspect out of the store and into the parking lot area where they were unable to apprehend him.
Following this incident, Mr. Rhodes and his wife left the store and she drove to her father's house to deliver the soup they had purchased. They then proceeded home, with Ms. Rhodes driving. During the drive, the couple once parked on the side of the road because of the pain Ms. Rhodes was experiencing. She continued that night in pain. She took Tylenol and administered cold packs to reliever her discomfort.
The next morning, Mr. Rhodes contacted Mr. Ross at the defendant store, in order that a full report of the incident could be filed.
Mrs. Rhodes was given medical treatments for the injuries she sustained. This suit for damages followed.

Liability
Defendant contends that the jury committed manifest error in concluding that its conduct fell below the standard of care and that their fault caused plaintiff's damages.
The standard of review utilized in cases such as this is set forth in Stobart v. State of Louisiana, through Department of Transportation and Development, 617 So.2d 880, (La.1993) at 882-883:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of `manifest error' or unless it is `clearly wrong.' Rosell v. ESCO, 549 So.2d 840 (La.1989). This court has announced a two-part test for the reversal of a factfinder's determinations:

*1170 1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
See Mart v. Hill, 505 So.2d 1120, 1127 (La.1987).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. Id. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. See generally, Cosse v. Allen-Bradley Co., 601 So.2d 1349, 1351 (La. 1992); Housley v. Cerise, 579 So.2d 973 (La.1991); Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. Esco, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). However, where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. Rosell, 549 So.2d at 844-45. Nonetheless, this Court has emphasized that `the reviewing court must always keep in mind that if the trial court or jury's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.' Housley v. Cerise, 579 So.2d 973 (La. 1991) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
This court has recognized that `[t]he reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.' Canter v. Koehring Co., 283 So.2d 716 (La.1973). Thus, where two permissible views of the evidence exist, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Id.

In particular, defendant, Winn Dixie, alleges that the jury erred in assessing it with 50% liability. It argues that Mr. Scott's actions were not the cause-in-fact of the accident and that they did not owe plaintiffs a duty to protect them against the unanticipated criminal acts of the shoplifter. We disagree.
In the Louisiana Supreme Court case of Mundy v. Department of Health & Human Resources, 620 So.2d 811, at 813-814 (La. 1993) the court discussed the duty-risk analysis to be applied in cases such as this:
In order to determine whether liability exists under the facts of a particular case, our court has adopted a duty-risk analysis. Under this analysis plaintiff must prove:
(1) the conduct in question was the cause-in-fact of the resulting harm,
(2) defendant owed a duty of care to plaintiff,
(3) the requisite duty was breached by the defendant,
(4) the risk of harm was within the scope of protection afforded by the duty breached.

Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289 (La.1993); Mart v. Hill, 505 So.2d 1120, 1122 (La. 1987). Whether a duty is owed is a question of law. Faucheaux, 615 So.2d at 292; Harris v. Pizza Hut of La., Inc., 455 So.2d 1364, 1371 (La.1984). Whether defendant has breached a duty owed is a question of *1171 fact. See Annis v. Shapiro, 517 So.2d 1237 (La.App. 4th Cir.1987). In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. St. Hill v. Tabor, 542 So.2d 499, 502 (La.1989); Harris, 455 So.2d at 1369; Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979) ... This duty does not extend to unforeseeable or unanticipated criminal acts by third persons. Harris, 455 So.2d at 1371. However, when a duty to protect others against such criminal misconduct has been assumed, liability may be created by a negligent breach of that duty. Restatement (Second) of Torts Sec. 324A.
In this case the following evidence exists concerning the attempted apprehension of the shoplifter:
Richard Scott, Sr., is the manager of the meat market at the defendant store. He has worked for defendant for 23 years. During that time he has had numerous training sessions, none of which involved instructions on the detention or apprehension of shoplifters. Mr. Scott had not been instructed as to what to look for in a potential shoplifter. He also admitted that he had neither seen nor read the store's employee training manual which covers this subject. Although Mr. Scott stated that the location manager for the store, Anthony Thibodaux, had told him he had the authority to deal with shoplifters, he had not been instructed in the manner in which this was to be done. This witness also testified that he was aware that the typical thing to do when a shoplifter is noticed is to observe the subject and notify the store manager. He did not do this. He admitted that he did not know that there was a store policy against chasing a suspect through the store. He also conceded that he had, prior to this time, chased a suspected shoplifter through the store.
Concerning this particular incident, Mr. Scott testified that, at the time in question, he was in the meat department and was engaged in straightening the meat counter. He saw the subject stick some meat packages into his coat. Mr. Scott approached the suspect and the suspect "took off". He then tried to catch the subject but was not running as fast as he could. Mr. Scott observed that there were no customers, nor employees, in the aisles. He assumed they were at the check-out area. Mr. Scott testified that he was aware that the only way out of the store was through the front register aisles. He stated that he did not give any warnings nor say anything as he ran past the plaintiffs in the check-out line. He continued to chase the subject and was joined by a bag boy and Mr. Rhodes who had offered assistance. The chase ensued until the suspect reached the middle of the parking lot. Realizing they could not apprehend the suspect, these three persons returned to the store.
Anthony Thibodaux, the store's location manager for 16 years, was not present on the date of the accident. He testified concerning the store's safety policies. He stated that there is a procedures manual which covers the subject of shoplifting. According to this witness, the manual contains "some" of the stores policies. Mr. Thibodaux also stated that he has modified some of the store's policies, but his changes were not in writing. Additionally, he had not notified those persons who wrote the policy manual of these changes. He further stated that the written policies could be changed if warranted by different circumstances.
Mr. Thibodaux further testified that he never instructed Mr. Scott to stop and arrest suspected shoplifters. He told Mr. Scott to keep an eye open and help stop shoplifters but "not to take matters into his own hands". Mr. Thibodaux said he had the authority to delegate duties and this is what he did concerning Mr. Scott. He stated that he took this action because shoplifting was a problem and by delegating Mr. Scott these duties it would increase the number of employees responsible for assisting with this problem.
He also stated that it was a violation of the store's policy to chase a suspected shoplifter through the store. However, this is not a violation of Mr. Thibodaux's policies.
The store's employee policy manual, alluded to by Mr. Thibodaux in his testimony, was introduced into evidence. It provides a *1172 policy regarding shoplifters. It states, in pertinent part:
4. Do not attempt to apprehend a shoplifter yourself. Warn your Location Manager and keep the shoplifter in sight. If you observe someone shoplifting, quietly notify the Location Manager.... Only Location Managers, Co-Managers, Assistant Location Managers, and District Managers are authorized to detain a customer for questioning concerning shoplifting.
REMEMBER:
[Do not detain the suspect in any way! Notify your Location Manager only!]
In this case, the defendant store owed their customers the duty to provide reasonable care for their safety, while shopping, and a duty not to expose them to an unreasonable risk of harm. In this regard the store had issued an employee manual which covered the subject of shoplifting. It contained provisions for the safe method in which to deal with this problem.
The jury concluded in its factual determination that the store's duty had been breached by the actions of the defendant's employee. This finding is clearly supported by the evidence. Mr. Scott, the meat manager, was not one of the persons designated by the defendant to handle shoplifters. Additionally, he did not follow the method prescribed by the store in dealing with the situation (i.e. "keep the shoplifter in sight" and "quietly notify the Location Manager"). Although, Mr. Thibodaux testified he had the authority to designate persons other than those specified in the store manual for this duty and to allow his employees to chase suspected shoplifters through the store, the jury apparently did not believe him and this was their prerogative as the fact-finders in this case. We find no error in this regard. Stobart, supra.
It is clear that "but for" the actions of Mr. Scott in attempting to apprehend the apparent shoplifter, Mrs. Rhodes would not have been injured. Mr. Scott admitted that the typical approach to shoplifting is to observe the shoplifter and notify the location manager. He was otherwise untrained in the methods of dealing with shoplifters and was unaware of the store's written policies on this subject. He was aware, however, that typically a shoplifter is observed and the store manager is notified.
Mr. Scott also stated that, on the date of this incident, he was aware that the only way out of the store was through the front register aisles and he knew that this was where the customers would be located. Additionally, he gave no warning to these customers of the impending danger as he ran through the check-out aisle chasing the suspect.
Finally, the injuries sustained by Mrs. Rhodes were not the unforeseen or unanticipated criminal acts of a third party, but rather resulted directly from the unauthorized and negligent acts of the defendant's store employee in attempting to apprehend a criminal in a store filled with customers. Such a risk was especially recognized by the defendant when it addressed the subject in its employee manual. Such a risk of injury was one contemplated by and encompassed in the store's duty to protect its customers from unreasonable harm and their duty to provide a safe place for customers to shop.
Under this duty-risk analysis of liability, it is clear that the trial court jury had a reasonable basis for their conclusions and they were not manifestly erroneous in finding the defendant store-owner liable for 50% of the damages sustained by the plaintiffs.

Jury Charges
Defendant contends that it was error for the trial court to reject three special jury charges presented by them.
The defendant's first requested jury charge contained the elements of a duty-risk analysis of liability. The second requested jury charge states the reasonable care standard owed by a business owner to its customers. It also states that there is no duty to protect others from a third party's criminal activity, but if such a duty is assumed, it will result in liability if negligently breached. In its final requested jury charge, the defendant states that where a suspect fled immediately upon confrontation and thereby injured store customer, the store owner could not be held liable.
*1173 In rejecting these three jury charges the trial judge gave the following reasons:
THE COURT:
I think the record contains all of the charges submitted by Mr. Lazarus, and you can let the record reflect that I gave none of the charges suggested by Mr. Lazarus as I felt the one that were applicable were included in the Court's general charge or otherwise I didn't consider them applicable to this case.
The defendant thereafter objected to the court's refusal to accept their requested jury charges.
It is the trial court's obligation, following the trial of the case and presentation of all evidence, to instruct the jurors on the law applicable to the cause submitted to them. La.C.C.P. Art. 1792. The parties may request specific jury charges. La. C.C.P. Art. 1793. The court need only give those jury instructions which fairly and reasonably point up issues, and which provide correct principles of law for the jury to apply to those issues. Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991), writ den., 582 So.2d 1309 (La.1991). In this regard, the court has discretion in the language it applies. Speyrer v. Sziszaks, 559 So.2d 12 (La. App. 1st Cir.1990). Thus, if a requested instruction is confusing, misleading or omits an essential element it is insufficient. See: Gonzales v. Xerox Corp., 307 So.2d 153 (La. App. 1st Cir.1974), aff., in part, reversed in part, on other grounds, 320 So.2d 163 (La. 1975).
In the present case we find no abuse of discretion by the trial court judge in rejecting the defendant's three requested jury instructions. Our review of the general jury charges presented at the submission of this case satisfies us that they fairly and reasonably pointed up the issues in this case and provided the jury with the correct principles of law. Although presented in more general terms, the first and second requested jury charges were contained in the court's general jury charges. We find the third requested jury charge to be misleading and incomplete and for this reason was likewise properly rejected by the trial court judge.
This assignment of error lacks merit.
For the reasons assigned, the judgment of the trial court is affirmed at defendant's costs.
AFFIRMED.