672 So.2d 302 (1996)
Wanda Ann Newman TAYLOR
v.
David STEWART, et al.
No. 95 CA 1743.
Court of Appeal of Louisiana, First Circuit.
April 4, 1996.
*304 Walton J. Barnes, II, Baton Rouge, for Plaintiff/Appellant, Wanda Ann Newman Taylor.
Amos H. Davis, Baton Rouge, for Defendant/Appellee, Dorothy Barksdale d/b/a "The Cue" and Interstate Fire and Casualty Company.
Alfred B. Shapiro, Baton Rouge, for Defendant David Stewart.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a motion for summary judgment in an action for damages.

BACKGROUND
Between January, 1990, and January, 1992, David Stewart was a daily patron at "The Cue," a lounge and pool hall located in East Baton Rouge Parish. "The Cue" was owned and operated by Dorothy F. Barksdale. In 1991, Stewart met Wanda Taylor. Stewart and Taylor were romantically involved for three to four months, but ceased dating after November or December, 1991. In March, 1992, Stewart married Jeanie Ammons, and he did not see Taylor socially after that time.
In January, 1992, (prior to his marriage), Stewart went to "The Cue" for a couple of hours with some friends, one of whom was female. Taylor was present on that occasion. According to Stewart, he was standing near the ladies' room, and Taylor made numerous trips into the ladies' room. During those trips, Taylor gave Stewart's female friend dirty looks and, on one occasion, pulled her aside and spoke with her. At that point, Stewart left "The Cue." When he did, an upset Taylor followed him outside and began slapping him. According to Stewart, Taylor professed her feelings for him. However, Stewart simply apologized and revealed that he intended to marry Jeanie. At that point, Taylor attempted to kick Stewart in the groin. As she did so, Stewart placed his hand up to block the kick, and Taylor fell to the ground and struck her head, knocking herself out.
After his marriage, Stewart went to "The Cue" on a couple of occasions. In early July, 1992, Stewart was involved in an argument about Taylor with two employees of "The Cue," namely Tammy Barksdale and Michelle New. According to Stewart, he complimented one of the ladies, which ignited the argument about Taylor. One of the two ladies advised him that he should not make those kinds of remarks in front of Taylor, given her feelings for Stewart. The ladies argued with Stewart about Taylor's feeling and his marriage to Jeanie. During the argument, the ladies approached Stewart, and he pushed a bar stool in their direction. At that point, someone grabbed Stewart's legs from behind, and the group fell to the floor.
Then, on the evening of July 15, 1992, the incident giving rise to the instant lawsuit occurred. On that evening, Stewart entered "The Cue," where he remained for approximately twenty minutes. Stewart then left to patronize "Joe C's," a lounge and pool hall located near "The Cue." After staying at "Joe C's" for approximately fifteen minutes, Stewart returned to "The Cue."
Stewart subsequently left "The Cue," slapping the wall near the doorway as he left the premises. Stewart entered his truck and was attempting to leave the parking lot adjacent to "The Cue," when a female friend approached Stewart to speak with him. As Stewart was conversing with his friend, his wife, Jeanie, drove her automobile into the parking lot and parked a short distance from Stewart. Stewart left the female friend and pulled his truck behind his wife's automobile. Jeanie exited her automobile and began yelling. She returned to her automobile and locked the door, refusing to speak with Stewart. Stewart struck the window, breaking *305 the glass. Thereafter, Stewart retreated to his truck.
As Stewart returned to his truck, Taylor, who had followed Stewart out of "The Cue," approached him. Stewart allegedly struck Taylor, and she fell to the ground.

FACTS
On July 12, 1993, Taylor filed an action for damages against Stewart,[2] Dorothy Barksdale d/b/a "The Cue," and Interstate Fire & Casualty Insurance Company (Interstate), Barksdale's liability insurer, for the injuries she sustained as a result of the July 15, 1992, incident. In her petition, Taylor alleged that Barksdale was negligent in failing to maintain the premises in a safe manner for its customers, permitting a person who she knew or should have known exhibited a propensity for violence to remain on the premises, and failing to notify police of the disturbance. Barksdale and Interstate answered Barksdale's petition, denying the allegations of liability, and averred that Taylor's damages resulted from her own negligence or as a result of the negligence of a third party for whom Barksdale had no responsibility.
Thereafter, Barksdale and Interstate filed a motion for summary judgment. In support of the motion, Barksdale and Interstate argued that Taylor's injuries were not foreseeable, nor was her injury within the scope of any duty "The Cue" owed to its patrons. Barksdale and Interstate also argued that Taylor was not injured on the premises of "The Cue." Attached to the motion for summary judgment were the deposition testimony of Barksdale, Jeanie Stewart, and David Stewart and an affidavit and survey by R.L. Bennett, showing "The Cue," its parking lot, and the adjacent buildings and parking lots.
In opposition to the motion for summary judgment, Taylor argued that the incident which culminated in her injuries commenced inside "The Cue" and involved one of its patrons and that Barksdale and the employees of "The Cue" owed her a duty to protect her and to notify the police department for assistance. Attached to Taylor's opposition was the affidavit of Yvonne Brown, a former employee of "The Cue."
After a hearing, the trial court rendered judgment in favor of Barksdale and Interstate and against Taylor, granting the motion for summary judgment and dismissing Taylor's claims against Barksdale and Interstate at her costs.
From this adverse judgment, Taylor appeals, assigning the following errors:
1. The trial court erred by deciding that Dorothy Barksdale owed Appellant no duty where the incident which culminated in the injuries to the Plaintiff occurred as part of a continuing series of events culminating in transactions at The Cue Lounge on the date of Appellant's injuries.
2. The trial court erred in finding that Dorothy Barksdale, her agents and employees, did not owe Appellant an affirmative duty at the time of the incident to protect her from danger or the potential thereof, including a mandate to call for police assistance.
3. The trial court erred in failing to find that there existed issues to be decided by the trier of fact, since it was shown that an apparent duty existed in light of David Stewart's actions before and at the time of the incident and Ms. Barksdale and her manager were aware thereof.
4. The trial court erred in granting the Motion for Summary Judgment.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Thompson v. South Central Bell Telephone Company, 411 So.2d 26, 27 (La. *306 1982); Legros v. Norcen Exploration, Inc., 583 So.2d 859, 860 (La.App. 1st Cir.), writs denied, 588 So.2d 101, 109 (La.1991).
A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989).
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that mover is entitled to judgment as a matter of law is summary judgment warranted. Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120. The court must closely scrutinize the papers supporting the position of the mover, while the papers of the party opposing the motion are to be treated indulgently. Ortego v. Ortego, 425 So.2d 1292, 1297 (La.App. 3rd Cir.1982), writ denied, 429 So.2d 147 (La.1983).
Summary judgments are not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583. In determining whether material facts have in fact been disposed of, any doubt is to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This is true even if grave doubt exists as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court is presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences must be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991).
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988).

A PROPRIETOR'S DUTIES TO HIS PATRONS
A business proprietor owes to his patrons the duty to provide a reasonably safe place. Toups v. Hawkins, 518 So.2d 1077, 1081 (La.App. 5th Cir.1987). Although he is not the insurer of his patrons or guests, the proprietor owes them a duty to exercise reasonable care to protect them in both their person and their property. Toups v. Hawkins, 518 So.2d at 1081. This general duty to protect extends to harm from insult, annoyance, and danger. Luckette v. Bart's on the Lake, Limited, 602 So.2d 108, 111 (La.App. 4th Cir.), writ denied, 608 So.2d 178 (La. 1992); Toups v. Hawkins, 518 So.2d at 1081.
Whether a duty is owed is a question of law. Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848 p. 5 (La.App. 1st Cir. 6/24/94), 638 So.2d 1168, 1170; Toups v. Hawkins, 518 So.2d at 1081. In general, the owner or operator of a facility has a duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993); Rhodes v. Winn-Dixie Louisiana, Inc., 638 So.2d at 1171.
The proprietor's general duty toward his patrons has been construed to encompass *307 a number of more specific obligations. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. Toups v. Hawkins, 518 So.2d at 1081. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon. Toups v. Hawkins, 518 So.2d at 1081. Beyond these measures, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party. Luckette v. Bart's on the Lake, Limited, 602 So.2d at 111; Toups v. Hawkins, 518 So.2d at 1081. See Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884, 887 (La.1981).
Reasonable care in the context of the threat of harm presented by the enumerated parties has been interpreted, in turn, to embrace certain sub-duties. First, should a disturbance or a likely disturbance manifest itself, the proprietor, if time allows, must attempt to prevent injury to his patrons by calling the police. Luckette v. Bart's on the Lake, Limited, 602 So.2d at 111; Toups v. Hawkins, 518 So.2d at 1081. Second, should the business owner or manager become aware of impending or possibly impending danger, he must warn his patrons of the potential danger. Toups v. Hawkins, 518 So.2d at 1081.
As to criminal acts performed by third parties specifically, there is, generally, no duty to protect others from the criminal acts of those parties. Harrison v. Clark, 607 So.2d 1, 2 (La.App. 2nd Cir.1992); Hebert v. Taco Bell Corporation, 613 So.2d 729, 731 (La.App. 4th Cir.1993); Toups v. Hawkins, 518 So.2d at 1081. In other words, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. Mundy v. Department of Health and Human Resources, 620 So.2d at 813; Rhodes v. Winn-Dixie Louisiana, Inc., 638 So.2d at 1171; Toups v. Hawkins, 518 So.2d at 1081; Ballew v. Southland Corporation, 482 So.2d 890, 893 (La.App. 2nd Cir.1986). Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked, triggering the sub-duties discussed above. Toups v. Hawkins, 518 So.2d at 1081; Ballew v. Southland Corporation, 482 So.2d at 893. In those circumstances, the duty can be discharged by summoning the police at the time the proprietor knows or should reasonably anticipate that the third person poses a probable danger. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d at 887; Hebert v. Taco Bell Corporation, 613 So.2d at 731; Ballew v. Southland Corporation, 482 So.2d at 893.
The contested issue presented in this case is whether Barksdale or the employees at "The Cue" owed a duty of care to Taylor to protect her against the risk involved.
In his deposition testimony, Stewart stated that, late in the evening on July 15, 1992, he went to "The Cue." He remained at "The Cue" for approximately twenty minutes, then he left to patronize "Joe C's," an establishment located near "The Cue." After staying at "Joe C's" approximately fifteen minutes, Stewart returned to "The Cue" and parked in the lot adjacent to "The Cue."
According to Stewart, he then approached the manager of "The Cue" to discuss the incident which had occurred earlier that month. Stewart stated that he blamed the manager for the incident in that the manager saw the entire incident and did nothing to stop the altercation with the two employees of "The Cue." The manager disagreed with Stewart, and Stewart stated that he left "The Cue" angry, slapping the wall near the exit doorway of the premises. Stewart insisted that he did not threaten anyone in "The Cue."
After Stewart entered his truck and was attempting to leave the parking lot adjacent to "The Cue," a female friend approached Stewart to speak with him. As Stewart was conversing with his friend, his wife, Jeanie, drove her automobile into the parking lot adjacent to "The Cue" and parked a short distance from Stewart. Stewart left the female friend standing in the parking lot and pulled his truck behind his wife's automobile. Stewart's wife then exited her automobile and began yelling, although Stewart stated that he was uncertain as to the reason for his wife's anger. Jeanie then returned to her *308 automobile and locked the door, refusing to speak with Stewart. As a result, Stewart struck the driver's window of his wife's automobile, breaking the glass, and then returned to his truck.
According to Stewart, as he approached his truck, Taylor ran toward him. Stewart did not know that Taylor had left "The Cue." When Taylor neared Stewart, he pushed her away, asking that she leave him alone. Stewart then left. According to Stewart, he did not learn that Taylor was injured until he was arrested several hours after the incident.
Stewart testified that, between January and July 15, 1992, he had no personal contact with Taylor other than the two incidents previously noted and the incident giving rise to the instant suit. However, Stewart stated that Taylor telephoned him at work, telephoned his home, and drove through his apartment complex parking lot during that time. In fact, according to Stewart, he had an unlisted telephone number, but Taylor had apparently obtained the telephone number from a check he had written at "The Cue." As a result, he changed his telephone number.
The deposition testimony of Dorothy Barksdale, owner of "The Cue," revealed that she did not have any problems with Stewart as a patron of her business establishment. Barksdale noted that, between January and July, 1992, she did not have any reports of difficulty with Stewart or Taylor.
However, Barksdale acknowledged that she was advised by one of her employees about the January, 1992, incident between Stewart and Taylor. According to Barksdale, after the January, 1992, incident, Taylor advised that Stewart was not bothering her. Taylor explained that she and Stewart were arguing and, when she attempted to kick him in the groin, she slipped and fell. Taylor assured Barksdale that such conduct would not occur again.
With regard to the incident involving Stewart and Taylor which occurred on July 15, 1992, Barksdale testified that, although she was not present during this incident, her manager Joe Miller, Yvonne Brown, and Michelle New were working that evening. Miller advised her that Stewart was going back and forth between her business establishment and the one next door. Miller advised that, while Stewart was playing a second game of pool, he became angry and struck the wall. Miller then requested that Stewart leave.
Barkdsdale stated that, to her knowledge, no one other than Stewart, Jeanie Stewart, and Taylor witnessed the incident between Stewart and Taylor, but that the incident occurred in the parking lot adjacent to "The Cue." According to Barksdale, she had no indication that Stewart and Taylor had spoken that evening or that the two had been involved in a disagreement of any kind prior to the incident in the parking lot.
Barksdale testified that, in her discussions with Taylor, it was clear that Taylor wanted Stewart back and that Taylor would never let Stewart go, despite the fact that he was married to someone else.
The deposition of Jeanie Stewart revealed that, on the evening of July 15, 1992, she looked for her husband because of a check he had written. Around midnight, Jeanie went to "The Cue" to locate her husband. As she approached "The Cue," Jeanie observed Stewart's truck in the parking lot adjacent to "The Cue." Jeanie also noticed Taylor and a friend standing in the parking lot adjacent to "The Cue."
Jeanie drove into the same parking lot in which her husband's truck was located and parked her automobile. Stewart then pulled his truck behind her automobile. Thereafter, Jeanie exited her automobile and began to speak with Stewart angrily. She then got back into her automobile, and Stewart struck the driver's window with his fist, causing the glass to break. Then, Stewart walked toward his truck and left. Jeanie then heard something hit the ground. Jeanie testified that, when she exited her automobile, she observed Taylor on the ground. Jeanie testified that she did not see her husband strike Taylor, nor did she see Taylor fall. As a result, she was uncertain as to how Taylor ended up on the ground. Jeanie further testified that she did not observe any injury to Taylor.
*309 The affidavit of Yvonne Brown revealed that she was employed at "The Cue" in 1991 and 1992. During her employment, on numerous occasions, Brown observed Stewart become disruptive to the employees and patrons, and she complained to Barksdale about Stewart's behavior. Brown further noted that she observed Stewart strike Taylor in January, 1992. According to Brown, the incident began inside "The Cue" and ended in the parking lot of "The Cue," when Stewart struck Taylor, causing her injury.
With regard to the incident giving rise to the instant lawsuit, Brown stated that she observed Stewart enter "The Cue" and argue with another patron and with Taylor. Thereafter, "Stewart left the bar and Wanda Taylor left shortly thereafter." Brown then recounted that Stewart's wife assisted Taylor, who was obviously injured, into "The Cue."
As set forth earlier, while a proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party, reasonable care embraces an attempt to prevent injury to his patrons by calling the police, if time allows, or warning the patron. However, as to criminal acts performed by third parties, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked.
In the instant case, we find that the factual situation does not warrant imposing a duty on Barksdale to protect Taylor. On the evening of July 15, 1992, neither Barksdale nor her employees had any prior knowledge that Stewart might harm Taylor. Although Stewart and Taylor had had differences in the past, the undisputed testimony of Barksdale revealed that Taylor had assured her there would be no trouble in the future. Moreover, Stewart made conscious attempts to avoid Taylor and did not seek her out. On the contrary, the uncontradicted evidence revealed that Taylor unrelentlessly pursued Stewart, even after his marriage to another woman.
Further, it is undisputed that Stewart did not strike Taylor while inside "The Cue." When Stewart left "The Cue," Taylor was located safely inside the establishment. Even assuming Stewart had posed some danger to Taylor inside the lounge, when Stewart left the premises, he was no longer a threat to Taylor or any other patron. Taylor, however, did not remain within the safety of the business establishment, but followed Stewart into the parking lot where she confronted him. We simply cannot say that Barksdale owed Taylor a duty under these facts. Therefore, we find that the motion for summary judgment was properly granted.

CONCLUSION
For the above reasons, the judgment of the trial court, granting Barksdale's and Interstate's motion for summary judgment and dismissing Taylor's demands, is affirmed. Taylor is cast for all costs.
AFFIRMED.
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore, by special appointment of the Louisiana Supreme Court.
[2] The issues regarding the liability of Stewart are not before this court on appeal.