ADRIENNE HICKMAN ON BEHALF OF HER MINOR CHILD, CHRISTOPHER KEITH HAMLIN, JR.
v.
CHEVRON U.S.A., INC., STADIUM CHEVRON CONVENIENCE STORE, MELVIN GEORGE, AND XYZ INSURANCE CO.
No. 2007 CA 0080.
Court of Appeal of Louisiana, First Circuit.
December 21, 2007.
NOT DESIGNATED FOR PUBLICATION.
GREGORY J. MILLER, Attorney for Plaintiff-Appellant Adrienne Hickman, on behalf of her minor child, Christopher Keith Hamlin, Jr.
TODD S. MANUEL, KATHRYN C. GOODSON, Taylor, Porter, Brooks, & Phillips, L.L.P., Attorneys for Defendants-Appellees Stadium Chevron Convenience Store and Melvin George.
Before PARRO, KUHN, and DOWNING, JJ.
PARRO, J.
Adrienne Hickman, on behalf of her minor child, Christopher Keith Hamlin, Jr., appeals a summary judgment in favor of Stadium Chevron Convenience Store and its owner, Melvin George, dismissing her wrongful death and survivor's claims against them arising out of the shooting death of Christopher Keith Hamlin. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND
On September 29, 2002, as Christopher Keith Hamlin (Hamlin) was pouring oil into his vehicle in the parking lot of the Stadium Chevron Convenience Store (the Stadium), he was shot and killed by an unknown assailant. The Stadium is owned by Melvin George (George) and is located across from Memorial Stadium at 1300 Scenic Highway in Baton Rouge, Louisiana. Hamlin had been partying at several places, including the Club Barcode in Baton Rouge and the Club Vibes in Port Allen. During the evening and early morning, at one or both of these nightclubs, Hamlin was involved in a fistfight.
After leaving the Club Vibes shortly after 4:00 a.m., Hamlin and a friend, April McCray, were heading to an all-night restaurant when Hamlin's car began smoking. Another couple was following them in a second vehicle. Both cars pulled into the Stadium's parking lot, and Hamlin bought oil from the clerk. The Stadium was open for business, but its doors were locked and the clerk transacted business through a payment window.
While Hamlin was pouring oil into his vehicle, another car with several passengers pulled into the Stadium's parking lot. One man got out of that car, brandishing a gun, and began shooting at Hamlin. Hamlin was shot several times and died as a result of his wounds; his friends were not injured. The assailant was never identified or apprehended, although the entire incident was captured on the Stadium's surveillance camera.
This suit was filed by Adrienne Hickman, as the natural mother of Hamlin's son, Christopher Keith Hamlin, Jr., against Chevron U.S.A., Inc., the Stadium, George, and their unnamed insurer(s). After discovery, the Stadium and George moved for summary judgment on the grounds that Hickman could not prove an essential element of her cause of action, namely, that the Stadium and George had a duty to protect Hamlin from an unforeseeable criminal act of a third party. After a hearing, the motion was granted, and Hickman's claims against the Stadium and George were dismissed. This appeal followed.

APPLICABLE LAW

Summary Judgment
An appellate court reviews a district court's decision to grant a motion for summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La. 7/5/94), 639 So.2d 730, 750. The motion should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966(B); Johnson v. Evan Hall Sugar Co-op., Inc., 01-2956 (La. App. 1st Or. 12/30/02), 836 So.2d 484, 486.
On a motion for summary judgment, if the moving party will not bear the burden of proof at trial on the matter before the court on the motion, the moving party must point out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. If the adverse party then fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact and summary judgment must be granted. LSA-C.C.P. art. 966(C)(2); Washauer v. J.C. Penney Co., Inc., 03-0642 (La. App. 1st Cir. 4/21/04), 879 So.2d 195, 197.
Article 967 of the Louisiana Code of Civil Procedure describes the type of documentation a party may submit in support of or in opposition to a motion for summary judgment. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181 (La. 2/29/00), 755 So.2d 226, 231. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth facts that would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits. LSA-C.C.P. art. 967. A document that is not an affidavit or sworn to in any way, or is not certified or attached to an affidavit, is not of sufficient evidentiary quality on summary judgment to be given weight in determining whether or not there remain genuine issues of material fact. Sanders v. J. Ray McDermott, Inc., 03-0064 (La. App. 1st Cir. 11/7/03), 867 So.2d 771, 775; Boland v. West Feliciana Parish Police Jury, 03-1297 (La. App. 1st Cir. 6/25/04), 878 So.2d 808, 813, writ denied, 04-2286 (La. 11/24/04), 888 So.2d 231.

Negligence
Louisiana courts have adopted a duty-risk analysis in determining whether to impose liability under the general negligence principles of Louisiana Civil Code article 2315. For liability to attach under a duty-risk analysis, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his or her conduct to a specific standard of care (the duty element); (2) the defendant failed to conform his or her conduct to the appropriate standard of care (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiffs injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiffs injuries (the scope of protection element); and (5) actual damages (the damage element). Pinsonneault v. Merchants & Farmers Bank & Trust Co., 01-2217 (La. 4/3/02), 816 So.2d 270, 275-76. The imposition of liability under general negligence principles requires proof that the defendant had actual or constructive knowledge of the risks and failed to take corrective action within a reasonable time. Hardenstein v. Cook Constr., Inc., 96-0829 (La. App. 1st Cir. 2/14/97), 691 So.2d 177, 183, writ denied, 97-0686 (La. 4/25/97), 692 So.2d 1093.
Duty is a question of law. The inquiry is whether a plaintiff has any law, either statutory, jurisprudential, or arising from general principles of fault, to support his or her claim. Bowman v. City of Baton Rouge/Parish of East Baton Rouge, 02-1376 (La. App. 1st Cir. 5/9/03), 849 So.2d 622, 627, writ denied, 03-1579 (La. 10/3/03), 855 So.2d 315. When no factual dispute exists and no credibility determinations are required, the legal question of the existence of a duty is appropriately addressed by summary judgment. Boland, 878 So.2d at 815-16.

Duty of business owners to patrons
A business proprietor owes his patrons the duty to provide a reasonably safe place. Taylor v. Stewart, 95-1743 (La. App. 1st Cir. 4/4/96), 672 So.2d 302, 306. The proprietor's general duty toward his patrons has been construed to encompass a number of more specific obligations. Taylor, 672 So.2d at 306-07. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon. Beyond these measures, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party. Id. at 307; Fredericks v. Daiquiris & Creams of Mandeville, L.L.C., 04-0567 (La. App. 1st Cir. 3/24/05), 906 So.2d 636, 640, writ denied, 05-1047 (La. 6/17/05), 904 So.2d 706.
As to criminal acts performed by third parties, there is generally no duty to protect others from the criminal acts of those parties. Taylor, 672 So.2d at 307. In other words, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. Id.; Rhodes v. Winn-Dixie Louisiana, Inc., 93-1848 (La. App. 1st Cir. 6/24/94), 638 So.2d 1168, 1171. Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third party's intended conduct is the duty to protect invoked. Taylor, 672 So.2d at 307. This duty only arises when the criminal act in question was reasonably foreseeable to the owner of the business. Determining when a crime is foreseeable is therefore a critical inquiry. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La. 11/30/99), 752 So.2d 762, 766.
The foreseeability of the crime risk on the defendant's property and the gravity of the risk determine the existence and the extent of the defendant's duty. The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. The plaintiff has the burden of establishing the duty the defendant owed under the circumstances. Bezet v. Original Library Joe's, Inc., 01-1586 (La. App. 1st Cir.11/8/02), 838 So.2d 796, 801.

ANALYSIS
Hickman would have had the burden at a trial on the merits of proving that George and the Stadium had a duty to prevent the harm that occurred. Therefore, as the moving parties, George and the Stadium could satisfy their burden of proof on the motion for summary judgment by pointing out to the court that there was an absence of factual support that they owed such a duty to Hamlin under the facts of this case. See LSA-C.C.P. art. 966(C)(2). If they did so, Hickman then had to produce factual support sufficient to establish that she would be able to satisfy her evidentiary burden of proof at trial. If she failed to make such a showing, there was no genuine issue of material fact, and summary judgment was appropriate. See LSA-C.C.P. art. 966(C)(2).
George and the Stadium supported their motion with an affidavit from George; a videotape of the shooting taken by the on-site security cameras; the affidavit of the investigating police officer, Detective Lonnie Lockett; and the deposition transcript of a witness to the shooting, April McCray, who was a passenger in the car Hamlin was driving the night he was killed. Hickman opposed the motion, and according to her brief to this court, supported her opposition with copies of four police reports evidencing previous acts of gun-related violence at or near the Stadium during the year preceding the shooting that is the subject of this suit. According to a memorandum in the record, this evidence was opposed by George and the Stadium, because the police reports were uncertified and unsworn documents attached to the opposition memorandum, but not accompanied or verified by an affidavit. However, if affidavits and depositions are filed in the record in connection with a motion for summary judgment, they may be considered by the district court and this court, even if simply attached to a motion or memorandum. Aydell v. Sterns, 98-3135 (La. 2/26/99), 731 So.2d 189, 189. In such a case, Articles 966 and 967 of the Louisiana Code of Civil Procedure specifically describe affidavits or depositions as admissible. Unsworn miscellaneous documents that are simply stapled or clipped to a motion or memorandum and referred to in such a document are not thereby made admissible evidence on a motion for summary judgment, even if filed in the record. See Boland, 878 So.2d at 814. Apparently the court agreed that these police reports were inadmissible, because they were not referred to by the court and are not in the record.[1]
The investigating officer's affidavit established that the premises of the Stadium were well lit and that a security camera was operational and recorded the shooting. McCray testified by deposition that when she and Hamlin met up, his lip was bleeding from an earlier altercation at either the Club Barcode or the Club Vibes. However, she did not know who else was involved in the fighting. McCray also said that she did not know the assailant and that he did not speak to Hamlin or attempt to rob him or the Stadium. He simply approached Hamlin without speaking and shot him several times. George acknowledged in his affidavit that he had owned and operated the Stadium since October 2001. He said the Stadium's parking lot and convenience store were well-lit and that a security camera on the premises recorded the shooting. George averred that the shooting incident involving Hamlin and his unknown assailant was the only drive-by shooting that had ever occurred on the premises of the Stadium. He identified the video recording of the shooting, which was attached to his affidavit.
The video footage from the drive-by shooting was provided to the Baton Rouge City Police and was included in a Crime Stoppers public service announcement that aired on a local news station. The videotape clearly shows two cars parked near the gas pumps in the lighted parking area of the Stadium; Hamlin's vehicle faces the store and has a raised hood; his friend's car is parked alongside, but facing the other direction. Hamlin is just off camera to the left in front of his car when another car can be seen driving slowly into the parking area. The front passenger door opens, and a man with an assault rifle emerges and begins shooting in Hamlin's direction; his friend runs toward the convenience store to avoid being hit. Eighteen shots are fired before the man gets back in the car and it is driven off the premises, leaving Hamlin lying in front of his car.
This evidence in support of the motion established that the drive-by shooting of Hamlin by a third party on the Stadium's premises was not foreseeable. Therefore, George and the Stadium had no duty to protect its customers from such criminal acts. Hickman submitted no admissible evidence to establish that she could satisfy her evidentiary burden of proof on this essential element of her claim at trial. Therefore, there is no genuine issue of material fact, and summary judgment was appropriate.

CONCLUSION
The judgment of September 20, 2006, is affirmed. All costs of this appeal are assessed to Hickman.
AFFIRMED.
NOTES
[1] Based on the descriptions of these police reports, they could have been relevant in determining whether the Stadium and its owner should have foreseen potential violence on or near the premises from criminal acts of third parties, such that they would have a duty to their customers to take steps to prevent such violence. However, no matter how relevant, evidence that is inadmissible due to being unverified hearsay can simply not be considered, either at a motion for summary judgment or at trial. See LSA-C.E. arts. 801(C), 802, and 803(8)(b)(i) (Investigative police reports are inadmissible hearsay).